**David TOLEDO**

v.

**STATE FARM FIRE & CASUALTY CO.**

**Civ. A. No. 92–4487.**

United States District Court,
E.D. Pennsylvania.

Nov. 23, 1992.

William J. Brennan, Butera, Beausang, Moyer & Cohen, King of Prussia, PA, for plaintiffs.

Christopher Thomson, McKissock & Hoffman, P.C., Philadelphia, PA, for defendant.

## MEMORANDUM

GILES, District Judge.

### I. INTRODUCTION

Plaintiff David Toledo ("Toledo") filed this suit in Pennsylvania state court on May 7, 1992. Defendant State Farm Fire and Casualty Company ("State Farm") removed the case to this court on the basis of diversity of citizenship and an amount in controversy in excess of $50,000. Our decision is governed by Pennsylvania law.

The complaint alleges facts as follows. Toledo is a scientist who does research on topics of importance to the pharmaceutical industry. When he moved into an apartment in May 1990, he stored 30 boxes and a suitcase in a separate storage unit at the apartment building. The stored materials included books and research materials relevant to and produced in connection with his

career. In late May of 1991 Toledo checked the storage locker and discovered that it was empty. None of the property has since been recovered.

State Farm issued a policy of homeowners insurance to Toledo which was in effect at all times relevant to the instant action. Following his discovery of the loss in late May 1991, Toledo asked State Farm to provide coverage for the loss under his homeowners policy. State Farm declined coverage in a letter dated October 9, 1991. Toledo filed the instant case on May 7, 1992, alleging that State Farm's failure to pay breached the insurance contract. He seeks to recover $77,061 for the loss of his property and $20,000 for future wages he claims will be lost as a result of the loss of his research materials. In addition, he seeks punitive damages for what he alleges was a bad faith failure to pay his claim.

State Farm has filed a motion for summary judgment, arguing that the plaintiff's suit is barred by a provision of the insurance contract which requires that all legal actions to recover insurance benefits must be started within one year after the date of loss or damage. Because we agree with defendant that this suit is time-barred, we grant the motion for summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment will be entered if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is the moving party which must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Once the moving party makes such a showing, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The nonmoving party must satisfy this burden through the introduction of testimony "as would be admissi-

ble in evidence," *Id.,* such as an affidavit or deposition testimony. Fed.R.Civ.P. 56(c). If, however, the moving party ultimately persuades the court that there are no genuine issues of material fact, then the court must decide whether the law dictates an outcome in favor of the moving party. If so, the motion for summary judgment must be granted.

## III. DISCUSSION

■ The sole issue presented by the summary judgment motion is whether this action is time-barred by a one year limitation on suit clause in the insurance contract. The clause provides:

> **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions. The action must be started within one year after the date of loss or damage.

*See* Defendant's Motion for Summary Judgment ("Defendant's Motion") ¶ 21; Plaintiff's Reply to Motion for Summary Judgment ("Plaintiff's Reply") ¶ 21. It is long established in Pennsylvania that such a contractual modification of the ordinary statute of limitations is valid and enforceable. *General State Authority v. Planet Insurance Co.,* 464 Pa. 162, 346 A.2d 265, 267 (1975).

The parties have stipulated that Toledo's property was removed from the storage locker without his knowledge on or about April 24, 1991. *See* Defendant's Motion, Exhibit "G." It is also undisputed that the loss was not discovered by Toledo until late May (sometime after May 15) 1991. *Id.* This suit was filed on May 7, 1992, more than one year from the date the property was removed, but less than one year from the date the loss was discovered. Given these undisputed facts, our judgment turns solely on a matter of law: did the one year suit limitation period begin to run at the time the property was removed, or at the time the loss was discovered by Toledo?

Our decision is controlled by the Pennsylvania Supreme Court's holding in *Lardas v. Underwriters Ins. Co.,* 426 Pa. 47, 231 A.2d 740 (1967). *Accord General State Authority v. Planet Insurance Co.,* 464

Pa. 162, 346 A.2d 265 (1975) ("*GSA*"). The plaintiffs in *Lardas* owned a warehouse in which they stored equipment used in their business. The defendant insurance companies insured the warehouse from loss by fire. The warehouse was destroyed by a fire on March 4, 1962. However, plaintiffs did not learn of the fire until July 15 of that year. As soon as they learned of the fire plaintiffs notified defendants of the loss, and settlement negotiations commenced between the parties. Plaintiffs rejected defendants' final offer in November 1962, and filed suit on March 28, 1963, more than a year from the time the fire occurred, but less than a year from the date that plaintiffs discovered their loss.

The insurance policy at issue in *Lardas* contained a one year suit limitation provision, substantially similar to the provision in the instant case, requiring that any lawsuit must be "commenced within 12 months next after the inception of the loss." 231 A.2d at 741. Thus, the Pennsylvania Supreme Court was faced with precisely the same question raised in the instant case. Plaintiffs argued that the twelve month limitation period should begin to run when the insured had knowledge of the loss. The court rejected plaintiffs' argument, holding that the language of the insurance contract's time of suit limitation was "too plain and unequivocal to be subject to any ambiguity of misunderstanding." 231 A.2d at 742. The "inception of the loss" was the date of the fire, not the date that the loss was discovered by the insured. *Id.*

Because the "inception of the loss" was the date of the fire rather than the date of discovery, the court found that it was "clear beyond question" that the insured had breached the one year suit limitation provision of the insurance contract. This failure by the insured to file suit within a year of the fire resulted in an "an absolute bar" to the claim. "To hold otherwise, in the factual matrix of this litigation would render meaningless this provision of the contract." 231 A.2d at 742–43.

The Pennsylvania Supreme Court confronted the question decided in *Lardas* again in *General State Authority, supra.*

In *GSA*, a building owned by the plaintiff was destroyed by fire on January 2, 1969. Plaintiff did not discover the loss until May 10, 1971, more than two years after the fire. Following *Lardas*, the Pennsylvania Supreme Court held that plaintiff was barred from filing suit by a provision in the insurance contract which required such a suit to be brought "within twelve months next after inception of the loss." *GSA*, 346 A.2d at 267. As in *Lardas*, the court addressed and rejected plaintiff's argument that the one year limit should be measured from the date that it became aware of the loss.

■ Thus, the Pennsylvania Supreme Court has twice considered and rejected plaintiff's argument that the one year limitation on suit should be measured from the date of discovery rather than the date the property was lost or destroyed. Plaintiff presents three arguments as to why defendants' motion for summary judgment should not be granted in spite of the clear command of *Lardas* and *GSA*. He first argues that Pennsylvania "discovery rule," which delays the onset of statutes of limitations in some cases, should apply in this case. Next he claims that the language of the suit limitation provision considered in *Lardas* and *GSA* differs in a significant way from that of the instant case. Finally, he argues that even if this suit should have been filed within a year after his property was removed, his failure to file suit should be forgiven because of the alleged bad faith failure by defendant to honor his claim. For the reasons stated below, all of plaintiff's arguments fail, and summary judgment is entered in favor of defendant.

### A. The Discovery Rule

Plaintiff urges the court to apply the so-called "discovery rule" in this case and delay the onset of the one year limitation on suits until the date that he discovered his loss. Since the discovery rule is a principle of statutory construction, *see, e.g., Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987), it is not clear that it is even arguably applicable in the instant case, which involves the interpretation of a

contractual modification of the statute of limitations. However, we assume for the sake of argument that the discovery rule may apply in some cases where the statute of limitations has been modified by consent of the parties. Nevertheless, we decline to apply it in the instant case.

Judge Newcomer has recently surveyed the purpose and history of the discovery rule:

> There has been a clear trend in this century to use the discovery rule to protect plaintiffs who are not themselves negligent in asserting claims, but who would be barred from bringing suit because they could not have discovered the injury until more than [the statutory period] after it had occurred. The discovery rule has the effect of *delaying* the running of the statute [of limitations] from the occurrence of the injury or breach of duty until the plaintiff either discovers he has been harmed or until he discovers the defendant's causal relation to his injury. The first major use of the rule was in subterranean injuries, [citations]. The rule has since been extended to medical malpractice cases, [citations]; personal injury cases, [citations]; asbestos cases, [citations]; breach of contract suits involving latent defects, [citations]; and wrongful death actions, [citing conflicting authorities].

*Bowman v. Abramson*, 545 F.Supp. 227, 230 (E.D.Pa.1982).[1]

■ As discussed above, the Pennsylvania Supreme Court has had two opportunities to apply the discovery rule in situations similar to that presented by the instant case. *Lardas; GSA*. In both cases, plaintiffs urged the court to delay the onset of a contractual one year limitation on suit to the time that the injury was discovered. In both cases the court declined to do so. For us to apply the discovery rule in the instant case would thus require us to overturn two prior decisions of the Pennsylvania Supreme Court. We would be very hesitant

to do so under any circumstances, and we refuse to do so now.

Plaintiff has cited no case where the discovery rule has been applied to a contractual limitation on suit clause of the type presented by this case. *Lardas* and *GSA* have been cited approximately forty times by state and federal courts applying Pennsylvania law. In none of these opinions has the refusal to apply the discovery rule ever been questioned. This is not a case where we are "confronted with old and conflicting authority and must therefore look to emerging trends in Pennsylvania law in order to 'predict but not form' state law." *Bowman v. Abramson*, 545 F.Supp. at 230 (quoting *Kohr v. Raybestos–Manhattan*, 505 F.Supp. 159 (E.D.Pa. 1981)). Instead we are presented with two on-point authorities, both of which refuse to apply the discovery rule and neither of which has been questioned by any court.

■ Even if we accept plaintiff's invitation to revisit the question of whether the discovery rule should apply in the instant case, we find that use of the rule here is inappropriate. The discovery rule is a principle of statutory construction, which we have assumed to apply to the contractual limitation at issue in this case. Courts are free to apply the discovery rule only if the statute of limitations (or contractual language) in question does not expressly or impliedly prohibit it. The Pennsylvania Supreme Court has stated that where the language of the statute of limitations requires that the action be filed within a certain time after a "definitely established event," the discovery rule cannot be read into the statute of limitations because the statute "leaves no room for construction." *Pastierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323, 325 (1987); *accord Levenson v. Souser*, 384 Pa.Super. 132, 557 A.2d 1081, 1087, *app. denied*, 524 Pa. 621, 571 A.2d 383 (1989).

The *Lardas* court held that a contractual limitation on suit clause substantially similar to the one at issue in this case referred

---

**1.** Since *Bowman* was decided, the Pennsylvania Supreme Court has held that the discovery rule does not apply to wrongful death actions. *Pas-* *tierik v. Duquesne Light Co.*, 514 Pa. 517, 526 A.2d 323 (1987).

"plain[ly] and unequivocal[ly]" to the date that the loss actually occurred, not to the date of discovery. *Lardas,* 231 A.2d at 742. Because the Pennsylvania Supreme Court has held that this language is unambiguous and refers to a "definitely established event," the clause "leaves no room for construction," *Pastierik,* and the discovery rule does not apply.

### B. Contractual Language Differences

Plaintiff attempts to distinguish *Lardas* and *GSA* by pointing to language contained in the instant limitation on suit clause which is different from that in the clause considered in those cases. The clause contemplated in *Lardas* and *GSA* required that suit be brought within one year "after inception of the loss." The policy in the instant case, on the other hand, requires the insured to sue within one year "after the date of loss or damage." Plaintiff argues that the "word 'inception' carries with it a reference to 'beginning' irrespective of discovery." Plaintiff's Reply at 6. Since the policy at issue in the instant case does not use the term "inception," plaintiff asks the court to conclude that *Lardas* and *GSA* are inapposite, and the one-year period should run from the date of discovery.

The court is not convinced that the difference in policy language is significant. Plaintiff cites no case which makes the distinction he urges. The single case found by the court which does discuss this distinction does not support plaintiff's argument. In *Ames Privilege Associates Limited Partnership v. Allendale Mutual Insurance Co.,* 1989 WL 145720 (D.Mass.1989) the district court distinguished insurance policy clauses barring suits later than a specified time after "the time the loss occurred" from those which measure time from "the inception of the loss" in a case where property damage resulted from rot caused by a fungal infection which spread through the wooden frame of a house. The court held that in such a situation, "inception of the loss" refers unambiguously to the time the damage begins. However the "time the loss occurred" is ambiguous since the damage is "progressive and continuing." *Id.* at *2. Because the "time

the loss occurred" is ambiguous in this particular factual situation, the court read the ambiguity against the insurance company and concluded that the time limit for filing suit should run from the date on which the insured could reasonably be expected to discover that a continuing occurrence was causing damage to insured property.

Unlike the "progressive and continuing" loss at issue in *Ames,* plaintiff's loss in the instant case occurred at a well-defined and discrete time. In this situation, "loss" is no more ambiguous than "inception of the loss" and there is no significance to the difference between the terms.

### C. Alleged Bad Faith Behavior by Defendant

Count II of the complaint alleges that State Farm acted in bad faith by refusing to properly investigate and pay plaintiff's claim. Plaintiff argues that, in light of this breach of duty by State Farm, his suit is not barred by his failure to file within the time prescribed in the limitation of suit clause. State Farm disputes plaintiff's contention that the claim was denied in bad faith. This dispute of fact does not preclude summary judgment, however, for it is immaterial to our decision. Even if we assume that plaintiff's characterization of the facts is correct, his argument fails as a matter of law.

Plaintiff is correct that bad faith behavior by the insurer can prevent it from asserting the one year limitation on suit as a defense. For example the *Lardas* court recognized that an insurer could be estopped from asserting the suit limitation clause if it induced or persuaded the insured not to file suit within the contractually agreed period. 231 A.2d at 742. In an effort to avoid summary judgment, plaintiff points to *Pini v. Allstate Insurance Co.,* 499 F.Supp. 1003 (E.D.Pa.1980), *aff'd without opinion,* 659 F.2d 1070 (3rd Cir. 1981), where the district court stated:

> Where the insurer affirmatively misleads the insured about the possibility of settlement, dissuades him from filing suit or induces him to believe that it will not

enforce the limitations period, courts construe this conduct as violative of the insurer's duty of "utmost good faith and fair dealing".... To prevent the insurer from profiting from its own misbehavior, courts do not interpret the clause strictly.... Importantly, the insured must be given an opportunity to establish a fact question on this issue.

*Id.*, 499 F.Supp. at 1004.

Although *Pini* is cited and quoted by plaintiff in support of his argument, the case actually commands judgment against him. In *Pini*, plaintiff filed suit against his insurer after the insurer refused to provide coverage for a loss. The insurer moved to dismiss because the suit was filed more than a year after the loss, in violation of the policy's one year limitation on suit clause. Plaintiff tried to avoid dismissal by claiming that the insurer's denial of coverage had been in bad faith, and that by this bad faith behavior the insurer had waived the one year limit. The court rejected plaintiff's argument, and granted the motion to dismiss, holding that it was irrelevant if the denial of claim had been in good or bad faith, since the insurer "expressed its intention not to pay within sufficient time for plaintiff to file suit." 499 F.Supp. at 1005. Thus, even if the denial had been in bad faith, plaintiff "still had sufficient time within which to comply with the terms of the policy." *Id.*

In the instant case, it is undisputed that State Farm rejected Toledo's claim in mid-October of 1992. *See* Defendant's Motion ¶ 15; Plaintiff's Reply ¶ 15. Thus, Toledo had approximately six months after the rejection of his claim to file this suit in a timely manner.[2] He "should not have sat idly watching the one-year time period elapse." *Pini*, 499 F.Supp. at 1005. His action is barred by the insurance contract's one year limitation on suits.

---

2. In *Pini,* the loss occurred sometime in April, 1979. (The court did not specify the exact date.) Defendant rejected plaintiff's claim on March 24, 1980. Thus, plaintiff had somewhere between one and five weeks after he was rejected in which to file a lawsuit, a far shorter period than in the instant case.