**CALN VILLAGE ASSOCIATES, L.P., Plaintiff,**

v.

**THE HOME INDEMNITY COMPANY, Aetna Casualty Company of Connecticut, and The American Insurance Company of Fireman's Fund, Defendants.**

**No. CIV.A. 96–6089.**

United States District Court, E.D. Pennsylvania.

Nov. 23, 1999.

Louis J. Carter, Philadelphia, PA, for plaintiff.

William F. Stewart, Philadelphia, PA, for defendants.

### MEMORANDUM

LOWELL A. REED, Jr., Senior District Judge.

Presently before the Court are the motions of defendants Aetna Casualty

Company of Connecticut ("Aetna"), The Home Indemnity Company ("Home") and The American Insurance Company of Fireman's Fund ("Fireman's Fund") (collectively "defendants") for summary judgment (Document Nos. 33, 34, 35), the response of plaintiff Caln Village Associates, L.P. ("Caln Village") and reply of defendants thereto.[1] The defendants provided insurance for the Caln Village Shopping Center. Caln Village made a claim under the policies but was denied coverage. This litigation ensued. For the reasons stated below, summary judgement will be granted.

## I. BACKGROUND[2]

Caln Village Associates is the owner of the Caln Village Shopping Center. Caln Village Associates is owned, *inter alia,* by Hough–Loew Associates, Inc., George Goldstone and Jack Loew. Hough–Loew Associates, Inc. is also the general partner of Caln Village Associates. (Appendix in Support of Defendant, American Insurance Company's Motion for Summary Judgement ("Fireman's Fund App."), Tab 3 at 12, & Tab 4 at 37). Herbert Yentis and Company ("HYC") is the managing agent of the Caln Village Shopping Center. Charles Ambrose has been the vice president of HYC since 1991 and was responsible for the day to day inspection of the Caln Village Shopping Center.

Construction of the Caln Village Shopping Center began in the latter half of 1990 and was substantially completed in September, 1991. Hough–Loew Construction, Inc., ("Hough–Loew") was the general contractor. Hough–Loew in turn is owned by Jack Loew. (Fireman's Fund App., Tab 4 at 37). HYC rented the stores and tenants moved into the stores in late September, 1991.

The shopping center has twenty-two in-line stores which are divided into three sections and four individual stores. The center section contains stores D through K. Caln Village asserts that those eight stores (D–K) suffered damage for which it is entitled to insurance coverage. Specifically, Caln Village claims that the general contractor's use of un-cured slag during construction has resulted in ongoing and progressive damage to the stores. Because the slag was un-cured, Caln Village contends that it has swelled and as a result the concrete floors in each of the stores (D–K) has risen which in turn has caused damage to the floors, doorways, walls, ceilings and fixtures.

The record is replete with internal memos and letters to and from Caln Village representatives complaining about damage to the stores at the shopping center. The complaints range from small things that need fixing (weather stripping, toilet seats and sticking doors) to water problems caused by driving rain entering the through doors to the rear of the stores and cracks in the walls and floors. Complaints about settlement cracks were a consistent theme, beginning in 1992. (*See* Fireman's Fund App., Tabs 13–32). The record indicates that on January 8, 1992, Ambrose reported to a Hough–Loew representative that there was a "severe settlement crack" in unit E. (*Id.* at Tab 13). The crack was approximately 20 feet long which had run completely through a four inch concrete slab. (Goldstone Dep. at 125). Settlement problems were again reported on August 7, 1992. (Fireman's Fund App. at Tab 17). A January 8, 1993, memo queries whether Hough–Loew has resolved the floor cracking problem yet. (*Id.* at Tab 19). On January 15, 1993, Ambrose called Hough–Loew about a crack in the wall through

---

**1.** The Court notes that jurisdiction is proper pursuant to 28 U.S.C. § 1332 as the parties are diverse and the amount in controversy exceeds $75,000.00, exclusive interest and costs. Also, it is undisputed that Pennsylvania law applies.

**2.** The following facts are based on the evidence of record viewed in the light most favorable to plaintiff Caln Village, the nonmoving party, as required when considering a motion for summary judgment. *See Carnegie Mellon Univ. v. Schwartz,* 105 F.3d 863, 865 (3d Cir.1997).

which the tenants "could see their neighbor." (*Id.* at Tab 20). On June 21, 1993, Ambrose wrote that stores D–K have a "fairly serious settlement problem in the front of each store." (*Id.* at Tab 24). On August 24, 1993, Ambrose asked for an update on the continuing settlement problems. (Appendix of Defendant, Aetna Casualty Company of Connecticut in Support of Its Motion for Summary Judgement ("Aetna App."), Tab 8, Exh. G).

On September 21, 1993, Mr. Goldstone, a part-owner of HYC, wrote to Hough–Loew with concerns about the continuing settlement problem. "We have a *serious problem* with the settlement condition, which is continuing along the fronts of the stores in the D through K units." (*Id.* at Tab 8, Exh. H (emphasis in original)). Goldstone explained that the settling caused the window sills to move down and, as a result, Caln Village expected to experience problems with glass breakage or leakage. He also linked the sticking of doors to the falling of the thresholds and settlement of door jams. Finally, he explains that the flash patching and new tiles which apparently had been provided by Hough–Loew only provided a temporary solution.[3] (*Id.*).

During the Spring of 1994, the "settling problem" began causing cracks to appear not just in the floors but also the walls. (Fireman's Fund App. at Tab 30). On June 9, 1994, Ambrose reported to Hough–Loew that the brick facade of one of the stores was separating from the walls around the window and door areas. (*Id.* at Tabs 32). Also, in one of the stores the sink was separating from the wall. (*Id.*).

By July 27, 1994, Hough–Loew had identified the cause of the "problem" at the Caln Village Shopping Center. An internal memo attributes the "problem" to expansive fill beneath the floor slabs. (*Id.* at Tab 33). According to the memo, the uncured slag was drawing in moisture and changing chemically which can cause uncured slag to expand up to 10% of its volume. (*Id.*). Although the memo stated that it is "impossible to determine" how long the expansion process takes, it also stated that it is possible to determine, by means of core drilling and x-ray diffraction analysis, if the chemical reaction is complete. (*Id.*).

On July 28, 1994, Mr. Thompson, President of Hough–Loew, wrote to Jack Loew, a principle in Caln Village, stating:

I spoke with Dave Davis regarding the apparent expansive slag problem at Caln Village. He did not see the necessity of getting an expert in at this time. He did however feel that it was extremely important to put the various subcontractors and insurance company [sic] on notice of the problem.

He also felt it was very important to level (no pun intended) with Yentis as to the problem and probable cause. To this end, I wrote you the attached memo with may be suitable to forward to them.

(*Id.* at Tab 34). Attached to the letter from Thompson was the July 27, 1994, memo in which Hough–Loew states that the damage at Caln Village is consistent with expansive fill beneath the floor slab, resulting in cracked and raised door thresholds, drywall cracks and cracks in the rear, painted block wall. (*Id.* at Tab 33).

On August 3, 1994, Goldstone wrote to Jack Loew acknowledging receipt of the memorandum advising him that the cause of the problems at Caln Village was likely expanding un-cured slag. (*Id.* at Tab 35). In the letter, Goldstone also suggests that core samples should be taken to determine

---

**3.** It appears that during this time Hough–Loew continued to address the various problems the shopping center was experiencing, both those obviously related to settling (by doing floor repairs, replacing tiles, flash patching etc.) as well as other repairs (insulating pipes, repairing drywall). (Aetna App. at Tab 8, Exh. V). Indeed, in a May 24, 1994 letter to Caln Village, a Hough–Loew representative explained that the crack in one of the stores was a result of a "cold joint" (when the concrete is poured at two separate times) and that, although there is movement in the floor it is minimal and does not require any type of repair. (*Id.* at Tab 8, Exh. N).

"whether or not a 'chemical reaction' of the slag is causing the problem." (*Id.*). In December of 1994, an engineering firm ("DBA") took core samples and did an analysis of the slag and the potential for further expansion. (Appendix in Support of Plaintiff, Caln Village Associates, L.P.'s Motion in Opposition to Defendants' Motion for Summary Judgment, ("Plt.App."), Tab 21). In February 1995, Caln Village had an engineer inspect the shopping center for structural integrity. (*Id.* at Tab 17). The report found that the building was "structurally adequate and pose[d] no danger to the occupants." (*Id.*). In March of 1995, DBA took more core samples and did an x-ray diffraction analysis, concluding that there was potential for long term expansion and that its laboratory tests indicated negligible swell over three months. (*Id.* at Tab 22). In November of 1995, another engineering firm ("Earth Engineering") conducted further studies and was unable to determine the projected actual amount of future expansion. (*Id.* at Tab 23). Earth Engineering opined that the only way to stop the expansion for certain was to fully remove the un-cured slag and replace it. (*Id.*).

In August of 1996, Caln Village sued Hough–Loew for breach of contract and negligence. (*Id.* at Tab 25). On September 5, 1996 Caln Village commenced this action against defendant Home. On November 11, 1996, Caln Village filed suit against defendants Aetna and Fireman's Fund in state court. By agreement, Aetna and Fireman's Fund were joined in this action.

The Aetna policies covered a period from October 19, 1991 through February 1, 1993. (Plt.App. at Tabs 2 & 3). The Fireman's Fund policies covered a period

from May 26, 1993 through January 1, 1998. (*Id.* at Tabs 5–9). The Home policies covered the period of May 26, 1990 through May 26, 1991 (with an effective date of Oct. 17, 1990) and May 26, 1992, through May 26, 1993 (with an effective date of March 22, 1993).[4] (Plt.App. at Tabs 1 & 4).

All three policies state that the insurer covers loss or damage "commencing during the policy period shown in the Declarations." (*See* Plt.App. at Tabs 42, 43, 44). All three policies also contain a suit limitation clause which states that no legal action may be brought unless the action is "brought within 2 years after the date on which the direct physical loss or damage occurred." (Plt.App. at Tab 1, 2, 5).

## II. LEGAL STANDARD

Defendants have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. Under Federal Rule of Civil Procedure 56(c), summary judgment may be granted when, "after considering the record evidence in the light most favorable to the nonmoving party, no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). For a dispute to be "genuine," the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the non-moving party to "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

4. Home inexplicably argues that the only insurance it provided was from February 1, 1993 through May 26, 1993. It strenuously reiterates this position in its reply brief, although it presumably had a copy of plaintiff's appendix containing, behind the first tab, a copy of an insurance policy issued by Home insuring the Caln Village Shopping Center between May 26, 1990 and May 26, 1991

(with an effective date of October 17, 1990). (*See* Plt.App. at Tab 1). In its brief, plaintiff asserts that another Home also insured the shopping center from October 19, 1991, through May 26, 1991. (Plt. Memorandum in Opposition to Defendant's Motion for Summary Judgment at 1–2 n.2). Plaintiff, however, has not included any verification that such a policy existed.

475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir.1982).

## III. DISCUSSION

The policies of all three defendants contain the same suit limitation clause. The clauses state, in pertinent part: "No one may bring a legal action against us under the Coverage Part unless ... [t]he action is brought within two years after the date on which the direct physical loss or damage occurred." *See* (Plt.App. at Tabs 43–45). Defendants argue that the damage occurred prior to September 5, 1994 and, because this lawsuit was not commenced until September 5, 1996, this action is time barred.[5]

Caln Village argues that the suit limitation clause is unreasonable and, therefore, unenforceable. Caln Village also argues that the defendants must meet a prejudice requirement before invoking a suit limitation clause. Caln Village further argues that the suit limitation language is ambiguous when applied to a ongoing and continuous loss or damage because there is no date on which the damage occurred and, therefore, the suit limitations clauses are either invalid or should be construed against the defendants. Finally, Caln Village argues that even if the clauses are valid, the discovery rule should apply to this case because the damage was not readily apparent.[6]

It is well established in Pennsylvania that a contractual modification of the ordinary statute of limitations is valid and enforceable. *Lyons v. Nationwide Ins. Co.*, 390 Pa.Super. 25, 567 A.2d 1100, 1102 (1989) (citing *Lardas v. Underwriters Ins. Co.*, 426 Pa. 47, 231 A.2d 740 (1967)); *see also Toledo v. State Farm Fire & Casualty Co.*, 810 F.Supp. 156, 157 (E.D.Pa.1992) (applying Pennsylvania law). By statute, Pennsylvania law provides that contractual limitations of suit provisions, which are shorter than the applicable statute of limitations, are valid provided they are not manifestly unreasonable. 42 Pa.Cons.Stat. Ann. § 5501(a). Here, but for the suit limitations clause, the applicable statute of limitations would be four years.[7] *See* 42

5. Depending upon its circumstance, each defendant offers a variation on this theme. For instance, because suit was not brought against defendants Fireman's Fund and Aetna until November 11, 1996, it argues that the damage occurred prior to and certainly no later than November 11, 1994. Also, Aetna argues that because coverage ended on February 1, 1993, any action brought after February 1, 1995 is time barred (because it is only liable for damage that occurred during the policy period). While these differences are not insignificant, they do not change the result when assuming the latest date by which Caln Village could have brought suit under any of the policies at issue.

6. The defendants also argue that the policies only provide coverage for "loss or damage commencing ... during the policy period" and that because the damage commenced prior to the policies at issue here, they are not liable. Specifically, Fireman's Fund argues that the damage commenced prior to May 26, 1993, when its policies first went into effect, Aetna argues that the damage commenced prior to October 19, 1991, when its policies first went into effect, and Home argues that the damage commenced prior to February 1, 1993, although there is a policy issued by Home insuring the property between May 26, 1990 and May 26, 1991 (with an effective date of October 17, 1990). (*See* Plt.App. at Tab 1). Caln Village, in turn, argues that the term "commencing" is ambiguous in the context of continuous and progressive damage and should be construed against the insurer. *See Kief Farmers Coop. Elevator Co. v. Farmland Mut. Ins. Co.*, 534 N.W.2d 28, 32–36 (N.D. 1995) (because damage manifested itself after it occurred, when damage "commenced" for purposes of coverage was ambiguous). Regardless of the interpretation given to the term "commencing," there are genuine issues of material fact which preclude summary judgment on this ground.

7. Caln Village argues that the applicable statute of limitations would be either six years (under the general statute of limitations clause, 42 Pa.Cons.Stat.Ann. § 5527) or twelve years (under the statute for actions seeking indemnity for construction deficiencies, 42 Pa.Cons.Stat.Ann. § 5536). Section 5536 applies to persons "performing or fur-

Pa. Cons.Stat. Ann. § 5525 (statute of limitations for contract actions). The Pennsylvania legislature, however, has recognized that a one year suit limitation clause in a fire policy is reasonable. 40 Pa.Stat.Ann. § 636(2); *see also Lardas,* 231 A.2d at 741 ("That [a one year suit limitations] clause is valid and reasonable has been long recognized."). The two year suit limitation clause at issue in this case provides insureds with twice that amount of time in which to file suit for property loss, including a fire loss. Thus, I conclude that a two year period is not manifestly unreasonable. *See Lardas,* 231 A.2d at 742 ("The period of twelve months, in fact the period of eight months, was not an unreasonable length of time in which to require the commencement of an action and ... 'it is lawful for the parties so to contract and such a provision is binding on them.' ").

■ Provided that the insurer did not lead the insured to believe that the contractual limitation period would not be enforced, an insurer does not need to show prejudice to enforce a suit limitation provision. *Hosp. Support Servs. Ltd. v. Kemper Group, Inc.,* 889 F.2d 1311, 1316 (3d Cir.1989) (interpreting Pennsylvania law); *Block v. Doubletree Hotels Corp.,* 5 F.Supp.2d 321, 323 (E.D.Pa.1998) (same); *Petraglia v. American Motorists Ins., Co.,* 284 Pa.Super. 1, 424 A.2d 1360, 1364 (1981), *aff'd,* 498 Pa. 32, 444 A.2d 653 (1982). In *Brakeman v. Potomac Insurance Company,* the Pennsylvania Supreme Court held that a showing of prejudice was required before an insurer could deny coverage based upon the insured's failure to comply with a policy provision requiring that written notice of an accident be given to the insurer "as soon as practicable." 472 Pa. 66, 371 A.2d 193, 195 (1977). A federal district court extended the prejudice requirement to a limitations clause. *See ACF Produce, Inc. v. Chubb/Pacific Indemnity Group,* 451 F.Supp. 1095, 1099

(E.D.Pa.1978). However, in *Hospital Support Services,* the Court of Appeals for the Third Circuit reviewed the application of the *Brakeman* rule to a one year suit limitation clause. 889 F.2d at 1313. The Court of Appeals held that "the *Brakeman* rule does not apply to limitation of suit clauses." *Id.* at 1316; *see also Jackson v. Chubb Group of Ins. Companies,* 1987 WL 8556, at *1–*3 (E.D.Pa. Mar.26, 1987). The Court of Appeals reasoned that the purpose of the notice of loss clause was to prevent prejudice to the insurer, whereas the suit limitation clause was simply a contractual modification of the statute of limitations. The Court of Appeals also stated that although a then recent Pennsylvania Superior Court decision declining to extend *Brakeman* could be distinguished as applying only to statutorily mandated suit limitations clauses, "we believe the [Superior Court] intended to express a more general reluctance to extend *Brakeman* to limitation of suit clauses." *Id.* (citing *Petraglia,* 284 Pa.Super. 1, 424 A.2d 1360 (1981)). Other courts that have considered the issue have declined to extend the *Brakeman* rationale to suit limitations clauses in the absence of a showing that the actions of the insurer lead the insured to believe that the contractual limitation period would not be enforced. *Block,* 5 F.Supp.2d at 323 (citing cases). Here, there is no evidence that any of the defendants led Caln Village to believe that the suit limitations clause would not be enforced. Thus, the defendants do not need to show prejudice in order to enforce the suit limitation provision.

■ Caln Village next argues that the language contained in the suit limitation clause is ambiguous when applied to continuous loss or damage and, therefore, is invalid or should be construed against the insurer. In essence, Caln Village is arguing that because the damage is ongoing

nishing the design, planning, supervision or observation of construction," and has no application here. The general statute of limitations only applies when no other limitations period applies. *See* Pa.Cons.Stat.Ann.

§ 5527. It does not apply here because this is a breach of contract action which has a separate a four year limitations period. *See* Pa. Cons.Stat.Ann. § 5525.

and continuous, it is difficult to determine when the damage occurred, precluding the application of the suit limitations clause. However, just because a clause is difficult to apply does not make it ambiguous.[8] Rather, an ambiguity only exists when a policy provision is reasonably susceptible to more than one meaning. *Tenos v. State Farm Ins. Co.*, 716 A.2d 626, 629 (Pa.Super.1998) (citing *Ryan Homes, Inc. v. Home Indemnity Co.*, 436 Pa.Super. 342, 647 A.2d 939, 941 (1994)). This is not a case where the clause is susceptible to more than one interpretation. The suit limitations clause runs from the date the loss insured against occurred.

■ The task before the Court then is to determine when the loss insured against occurred. In Pennsylvania, courts apply an "effects" analysis to determine when an occurrence happens. *D'Auria v. Zurich Ins. Co.*, 352 Pa.Super. 231, 507 A.2d 857, 860–61 (1986). Under an effects analysis, when an occurrence happens is determined by reference to the time when the injurious effects of the occurrence take place. *Id.* However, for purposes of determining when an occurrence happens, an insured need not be informed of the exact cause of the injury. *Id.* at 862. There may be a sufficient manifestation of an injury to satisfy the test of an occurrence before either the ultimate injury becomes a certain proposition or the exact cause of the injury is determined. *Id.* Thus, an occurrence happens "when the injurious effects ... first manifest themselves in a way the would put a reasonable person on notice of injury." *D'Auria* 507 A.2d at 861–62. Accordingly, the time or date the direct physical damage or loss occurs for purposes of the suit limitations clauses at issue here is ascertained by determining when the injurious effects first manifest themselves in a way that would put a reasonable person on notice of injury.[9] *D'Auria,* 507 A.2d at 861–62.

■ Here, the undisputed evidence is that: cracks in the floor appeared almost immediately after the construction was complete; Caln Village has admitted that some of the physical damage manifested itself prior to January, 1992; the number and size of the cracks progressively increased; the rear wall began to separate from the building; the cracks and problems associated with the foundation moving were continual and became more pronounced with the passage of time; remedial efforts were unsuccessful; and finally, the Caln Village received a report suggesting that the problems were consistent with expansive fill beneath the floor slabs and that it was impossible to determine how long the process would take. In hindsight, it appears from the

---

8. Moreover, even if I did find that the clause was ambiguous, I would not excise it from the policy. Suit limitations clauses do not run counter to the public policy of Pennsylvania. *See, e.g., Lyons,* 567 A.2d at 1102; *Fennell v. Nationwide Mut. Fire Ins. Co.,* 412 Pa.Super. 534, 603 A.2d 1064, 1068 (1992). Rather, under Pennsylvania law, when a clause in an insurance policy is ambiguous, it is construed against the insurer. *Bateman v. Motorist Mut. Ins. Co.,* 527 Pa. 241, 590 A.2d 281, 283 (1991). Thus, were I to find that the clauses are ambiguous, I would construe them to allow the insured to file suit within two years of the date on which the insured is put on reasonable notice of an injury. *See Ames Privilege Assoc. Ltd. Partnership v. Allendale Mut. Ins. Co.,* 1989 WL 145720, *2–*4 (D.Mass. Nov.30, 1989), *vacated in part on reconsideration,* 742 F.Supp. 700 (D.Mass. 1990). As the following analysis demonstrates, however, such a construction would not alter the result.

9. Caln Village notes that statute of limitations cases have little bearing on when an event occurs for purposes of insurance coverage. *See City of Erie, Pennsylvania v. Guaranty National Ins. Co.,* 109 F.3d 156, 161–62 (3d Cir.1997) (collecting cases). While that in and of itself may be true, here the policy language makes clear the suit limitations clause is triggered by the occurrence of the loss insured against. Thus, the law of Pennsylvania with respect to when a loss occurs for purposes of insurance coverage is manifestly controlling for purposes of the limitations clauses at issue here. Cases holding that a statute of limitation analysis is inapplicable to when an occurrence happens for coverage purposes are inapposite because of the clear language of the policies at issue here.

record that the injurious effects of the un-cured slag began to manifest themselves relatively soon after the project was completed. However, at the time the damage appeared to be the result of normal settling. Thus, viewing the evidence in the light most favorable to the nonmoving party, Caln Village, the first appearance of cracks would not necessarily put a reasonable person on notice of an injury. However, I conclude that a reasonable jury, based upon the evidence here must find that, after two years of ongoing and progressive damage, the direct physical damage or loss had manifested itself in a way that could be ascertained by reasonable diligence. This is clearly not a situation where Caln Village is blamelessly innocent of hidden damage. It is uncontroverted as a matter of fact that the passage of time coupled with the damage becoming more pronounced would have made it manifestly apparent to a reasonable person that the persistent problems were not due to normal settlement.

Moreover, contrary to the assertion of Caln Village—that it did not know of the injury until after receiving an engineer's report definitively attributing the problems to expanding un-cured slag—it is uncontroverted that there was a sufficient manifestation of the injury to satisfy the test of an occurrence prior to it receiving its expert report. As the *D'Auria* Court explained, it is not necessary to wait for the ultimate injury to become a certain proposition before the existence of the injury could be ascertained by reasonable diligence. 507 A.2d at 862; *see also*

*Cluett, Peabody & Co., Inc. v. Campbell, Rea, Hayes & Large,* 492 F.Supp. 67, 68 (M.D.Pa.1980) (plaintiff knew or should have known of loss after more than year of continuous and progressive damage and after engineer report indicated that roof may need to be replaced); *Lally v. Allstate Ins. Co.,* 724 F.Supp. 760, 761–63 (S.D.Cal. 1989) (reasonable person on notice of loss when damage is reasonably observable not after geologist report identifying cause), *aff'd,* 930 F.2d 28 (9th Cir.1991). Certainly by July 28, 1994, when Caln Village learned that the problems at Caln Village were consistent with the expansion of un-cured slag, a reasonable person would have been on notice that the problems at Caln Village were not due to normal settling but the result of an injury due to expanding un-cured slag. For the same reason, even if a jury could draw an inference from the record that Caln Village was not put on notice by the persistent and progressive nature of the problems because it believed that the problems were due to normal settling, the last possible day on which the limitations period could begin is July 28, 1994. Again, by July 28, 1994, it is uncontroverted that Caln Village was on notice that the problems at the shopping center were not due to normal settling but the result of an injury due to expanding un-cured slag. By then Caln Village not only had knowledge of the problems and the extent of the problems but also the possible cause of the problem and thus was on notice of the injury such that the limitations period began to run. Based upon the evidence presented, a reasonable jury could not find otherwise.[10]

---

**10.** As a general rule, a factual determination of when a reasonable person had would have discovered or had notice of an injury is usually for the jury. *See Cappelli v. York Operating Co., Inc.,* 711 A.2d 481, 485–86 (Pa.Super.1998) (citing *Cochran v. GAF Corp.,* 542 Pa. 210, 666 A.2d 245, 248 (1995)); *Haggart v. Cho,* 703 A.2d 522, 528 (Pa.Super.1997). Where reasonable minds could differ as to when the injury was ascertainable, a jury question is presented and summary judgment is inappropriate. *Cappelli,* 711 A.2d at 488–89. However, summary judgment may be entered where the undisputed facts lead un-

erringly to the conclusion that the time it took to discover an injury was unreasonable as a matter of law. *Haggart,* 703 A.2d at 528; *see also Cluett,* 492 F.Supp. at 75 (plaintiff's claim time barred after court determined by when plaintiff knew or should have known of the cause of the injury). Here, no reasonable jury could find that by the time Caln Village received the report from Hough–Loew stating that the damage was consistent with expanding slag, that Caln Village was not on notice that the damage was due to something other than normal settling; namely, the expanding of un-cured slag in the foundation. Because

**413**

Because Caln Village did not file suit until September 5, 1996, this action is time barred as to all the defendants and must be dismissed as untimely.[11]

## IV. CONCLUSION

Based upon the foregoing analysis, I will grant the motions. An appropriate Order follows.

### ORDER

**AND NOW** this 23rd day of November, 1999, upon consideration of the motions for summary judgement of defendants, Aetna Casualty Company of Connecticut (Document No. 33), The Home Indemnity Company (Document No. 34), and The American Insurance Company of Fireman's Fund (Document No. 35), and the response of plaintiff Caln Village Associates, L.P. (Document No. 40) and reply of defendants thereto, as well as the supporting memoranda, pleadings, discovery record, exhibits and affidavits submitted by the parties, having found that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law, and for the reasons set forth in the foregoing memorandum, it is hereby **ORDERED** that the motions are **GRANTED**. Judgment is hereby entered in favor of the

defendants, Aetna Casualty Company of Connecticut, The Home Indemnity Company, and The American Insurance Company of Fireman's Fund and against plaintiff Caln Village Associates, L.P.

This is a final Order.

Caln Village was bound to know what was plainly apparent by then, the limitations period it contracted for commenced July 28, 1994.

11. Caln Village argues that in cases of continuing and ongoing progressive damage, the Court should apply the discovery rule. The discovery rule, when applied, operates to toll the statute of limitations until such time as the plaintiff discovers, or should have reasonably discovered the injury. The discovery rule generally "arises from the *inability* of the injured, *despite the exercise of due diligence,* to know of the injury or its cause." *Pocono Int'l Raceway, Inc. v. Pocono Produce,* 503 Pa. 80, 468 A.2d 468, 471 (1983) (emphasis in original). As discussed in *Toledo v. State Farm Fire and Casualty Company,* the Pennsylvania Supreme Court has not applied the discovery rule to suit limitations clauses where the language is unambiguous and refers to a "definitely established event" because the clause "leaves no room for construction." 810

F.Supp. 156, 159–60 (E.D.Pa.1992) (citations omitted). Under the facts of this case, I find the discovery rule is inapplicable because the suit limitations clauses are unambiguous. Moreover, even if the discovery rule were applicable, it would not change the result. The discovery rule tolls the limitations period until the plaintiff discovers or *should have reasonably discovered the injury. Pocono Int'l Raceway,* 468 A.2d at 471. Here, Caln Village should have reasonably discovered the injury when the injury manifested itself so as to put a reasonable person on notice of the injury. The facts here are that Caln Village suffered ongoing and progressive damage for over two years and was finally informed that the damage was most likely being caused by expanding un-cured slag in the foundation. Thus, the discovery rule would not have tolled the limitations period beyond July 28, 1994. Again, no reasonable jury could find otherwise. Therefore, application of the discovery rule would not prevent this action from being time barred.