NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1793
_____

REBECCA NELSON,
                                        Appellant

v.

STATE FARM FIRE AND CASUALTY CO
_____

On Appeal from the United States District Court
For the Western District of Pennsylvania
(D.C. No. 2-19-cv- 01382)
District Judge:  Honorable Robert J. Colville
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
March 8, 2024

Before:   JORDAN, PHIPPS, and FREEMAN, *Circuit Judges*

(Filed March 15, 2024)
_____

OPINION*
_____

JORDAN, *Circuit Judge*.

Rebecca Nelson appeals the District Court's order granting the motion of State

Farm Fire and Casualty Company ("State Farm") for summary judgment as to Nelson's

_____

* This disposition is not an opinion of the full court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

breach of contract and bad faith claims. The District Court held that the breach of contract claim based on State Farm's denial of coverage for property loss was time-barred and that the bad faith claim for the same was not supported by clear and convincing evidence, as required under Pennsylvania law. For the reasons that follow, we will affirm.

## I. BACKGROUND[1]

Nelson had a homeowner's insurance policy with State Farm. The policy provided coverage for "accidental direct physical loss" to property. (J.A. at 87.) Design, workmanship, construction, or maintenance defects, as well as "wet or dry rot[,]" "wear, tear, … deterioration, … latent defect or mechanical breakdown" were explicitly not covered under the policy.[2] (J.A. at 76, 89, 91.) The policy did, however, cover losses "resulting" from some of those exclusions, but not when "the resulting loss [was] itself" one of the excluded forms of damage. (J.A. at 90-91.)

Further, the policy defined "occurrence" as "an accident, including exposure to conditions, which results in … property damage[,]" and it specified that "[r]epeated or continuous exposure to the same general conditions is considered to be one occurrence." (J.A. 82.) Finally, the policy provided: "No action shall be brought unless there has been

---

[1] This background information is drawn from the District Court's opinion granting State Farm's motion for summary judgment and the relevant portions of the record.

[2] The policy also excluded coverage for fungus/mold, including "any remediation of fungus[.]" (J.A. at 77.)

compliance with the policy provisions. The action must be started within one year after the date of loss or damage." (J.A. at 94.)

On or around April 3, 2018, Nelson noticed interior damage to the wall at the corner of her kitchen window "that appeared to be [a] bubble." (J.A. at 121.) She spoke with a contractor who provided an estimate to repair the damage. She did not have it repaired at the time. Approximately five months later, she attempted to have the same contractor fix the damage, but he was unavailable throughout September, October, and November of 2018.

By the time she last contacted the contractor in November of that year, Nelson noticed additional damage. She stated that the damage "had spread in its original size[,]" and she noticed damage to another corner of the window, as well as what she described as "tunneling" on the inside window frame. (J.A. at 354.)

In December of 2018, Nelson asked a different contractor, Jack Giacobbi, to perform the repairs. While inspecting the house with Giacobbi, Nelson saw similar damage in her guest bedroom. Nelson said that Giacobbi told her a gutter had separated from the roof and so water was not properly running off it, but was instead "channeling into the flashing" around the windows, which caused the damage. (J.A. at 358.) Nelson hired Giacobbi's company, Scopewell, to install a tarp on her roof.[3]

---

[3] The parties dispute whether State Farm had been informed of the damage prior to the installation of the tarp.

On December 17, 2018, Nelson retained a public adjuster, Brian Pfister, to submit and manage her insurance claim for the damage. Nelson's contract with Pfister states that on April 3, 2018, her home sustained damages that "were caused by, and/or were the result of water[.]" (J.A. at 401.) On December 20, Pfister reported the damage to State Farm on Nelson's behalf.

The following day, Nelson retained ServiceMaster Restore by All Pro ("ServiceMaster"), a water remediation company, to inspect the property and damage at issue. ServiceMaster concluded that a "mechanical failure or defect in the overhang of the roof" caused the damage. (J.A. at 8.) On December 22, ServiceMaster provided Nelson with an estimate for the water remediation, and she authorized it to perform the work.[4] ServiceMaster "located areas of drywall around the kitchen window that had eroded severally [sic] to the point that these areas had no remaining structural integrity[]" and "found mold and deterioration throughout the affected areas of the kitchen" and in Nelson's upstairs bedroom. Nelson also observed mold when the drywall had been removed.

In either late December or early January, State Farm employee Chad Moore was assigned to handle Nelson's claim and to inspect the property. ServiceMaster had completed its remediation work on January 7, 2019, and on January 9, 2019, Moore inspected the property with Pfister present. State Farm's claim records indicate Moore

---

[4] The parties dispute whether State Farm approved or promised Nelson that it would pay for the water remediation work.

4

observed that: (1) "[w]ater appear[ed] to have entered into the … exterior wall from the roof or upper … elevation allowing water to seep down through the framing"; (2) the water infiltration had caused varying degrees of deterioration and rot to the third-floor bedroom wall and the second-floor kitchen wall and subfloor; and (3) a tarp had been installed on Nelson's roof.[5]  (J.A. at 270.)

On January 19, 2019, State Farm sent Nelson a status letter that listed April 3, 2018, as the date of loss, quoted the Policy's provision requiring any action to be started within one year after the date of loss, and informed Nelson that her claim remained pending due to the coverage investigation and that State Farm "need[ed] any information regarding the source of water and the reason for the tarp on the roof[.]"  (J.A. at 234.)

At the end of January, Pfister informed State Farm that Scopewell was the contractor that had installed the tarp.  .]  Moore could not reach Scopewell until February 27, 2019, at which point Scopewell advised Moore that it had not performed any roof inspection.  That next day, Moore told Pfister that State Farm was sending someone to perform a roof inspection, but Pfister said the proposed inspector would not be allowed on the property.  Moore then contacted a different contractor, Restoration Management Services ("RMS"), to conduct the roof inspection.

_____

[5] The parties dispute whether Pfister and Moore, at the time of Moore's inspection, "knew of the source of the water infiltration and the basis for the tarp's placement" on Nelson's roof, or whether Pfister was to obtain and provide that information to State Farm following the inspection.  (J.A. at 9.)

On March 1, 2019, State Farm sent Nelson another status letter which again identified April 3, 2018, as the date of loss and quoted the same contractual limitation provision requiring suit to be filed within a year of that date.

On March 11, 2019, RMS inspected Nelson's roof with Pfister present. RMS's report stated that there were many issues with the roof, and that the "drip edge on the roof without an overhang is not in the gutter, but is on the rear elevation of the structure above the affected areas in the home." (J.A. at 240.) As a result, RMS believed that "water [was] able to run off the drip edge down the rear elevation, which has caused the fascia to lift in the same area, and penetrate onto the sheathing on the rear elevation." (J.A. at 240.) Over time, this intrusion caused the water damage to Nelson's home. RMS sent its report to Moore on March 15, 2019.

On March 29, 2019, Moore sent Pfister a copy of RMS's report along with a letter denying Nelson's claim based on State Farm's determination that the loss was not covered by the policy. The denial letter that explained State Farm had determined there was no coverage for the damage to the exterior wall because it was "related to design, construction or maintenance." (J.A. at 243.) And "the water damage that has resulted in rot and deterioration … is not covered, as well as that which has resulted in the development of mold/fungus." (J.A. at 243.) The letter also reiterated the date of loss as April 3, 2018, and once again noted the contractual limitation period. After receiving no further communication from Pfister or Nelson, Moore closed Nelson's claim on April 11, 2019.

On April 16, 2019, State Farm received a letter of representation from Nelson's counsel stating, "it is my intention to commence litigation within ten (10) days if State Farm does not provide coverage for this loss." (J.A. at 247.) On May 15, 2019, State Farm sent a letter to Nelson's counsel stating that it stood by its denial of coverage, but offered to pay the costs of the initial water remediation work as a compromise. State Farm also reserved its policy defenses and, once again, reiterated the suit limitation provision. Nelson rejected State Farm's offer and initiated this action on May 22, 2019.

Following discovery, State Farm moved for summary judgment on all of Nelson's claims.[6] The District Court granted State Farm's motion for summary judgment and entered judgment in its favor. This timely appeal followed.

## II.    DISCUSSION[7]

Nelson argues that the District Court erred in finding that her breach of contract claim is barred by the policy's contractual limitation on filing suit and that there are

---

[6] At the time State Farm moved for summary judgment, Nelson's claims were for breach of contract, statutory bad faith insurance practices under 42 Pa. Cons. Stat. § 8371, negligent misrepresentation, and violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 Pa. Stat. § 201-1 *et seq*. Nelson does not appeal the District Court's dismissal of her negligent misrepresentation or UTPCPL claims.

[7] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. "We review the District Court's grant of summary judgment de novo." *PIM Brands Inc. v. Haribo of Am. Inc.*, 81 F.4th 317, 320 (3d Cir. 2023). "We ask whether any material fact is genuinely disputed and whether, viewing the facts most favorably to [the nonmoving party], [the moving party] merits judgment as a matter of law." *Id.* "A dispute is 'genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

7

genuine issues of material fact which preclude summary judgment of her bad faith claim. We take up each of those contentions in turn.

### A. Nelson's breach of contract claim is untimely under the policy's time limitation on filing suit.[8]

Nelson's State Farm policy contained a suit limitation provision which stated that any "action must be started within one year after the date of loss or damage." (J.A. at 94.) Nelson initiated her suit on May 22, 2019, and admits that she first discovered damage to her property on April 3, 2018, which would certainly appear to make her suit untimely. But she argues that April 3, 2018, should not be counted as the date of loss because she "did not know, and reasonably could not know, that water was entering the structure of her home from the roof until December of 2018." (Opening Br. at 12.)

Typically, a limitations period begins to run when the "right to institute and maintain suit arises." *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 231 (3d Cir. 2003). However, "in some circumstances, although the right to institute suit may arise, a party may not, despite the exercise of diligence, reasonably discover that he has been injured." *Id.* (quoting *Crouse v. Cyclops Indus.*, 745 A.2d 606, 611 (Pa. 2000)). "In such cases, the discovery rule applies." *Id.* The discovery rule "tolls the running of the applicable … limitations [period] until the point where the complaining party knows or reasonably

---

[8] Nelson does not dispute the validity of the suit limitation provision in the policy, which is enforceable under Pennsylvania law. *See Gen. State Auth. v. Planet Ins. Co.*, 346 A.2d 265 (Pa. 1975) (holding a twelve-month time limit on commencing suit, which is the same term in the present case, is enforceable). Her argument is only that "the District Court inappropriately used April 3, 2018[,] as the date of loss as opposed to a later date." (Opening Br. at 12 n.1.)

should know that" it suffered a loss. *Id.* Nelson argues that in this case, "where the damage is progressive and continuing[,] … the time limit for filing suit should run from the date on which the insured could reasonably be expected to discover that a continuing occurrence was causing damage." (Opening Br. at 13 (internal quotation marks and citation omitted).)

She argues the appropriate date was sometime in December of 2018, rather than April 3, 2018. The record, however, unequivocally confirms that she first discovered damage on April 3, 2018. First, her contract with Pfister stated the date of loss as April 3, 2018, because that was the date that she told Pfister the damage began. In turn, Pfister reported to State Farm that April 3 was the date of loss. And she never disputed that date of loss before bringing this suit. She also testified at her deposition that she noticed damage in her home on that date, although she had "no idea" what caused it. (J.A. at 350.) It is undisputed, then, that Nelson discovered damage to her home on April 3, 2018, and that she did not file suit within one year of that date.

Nelson tries to skirt those facts by arguing that even if April 3, 2018, was the initial date of loss, the damage to her home was continuous and so "any claim for loss or damage that occurred on or after May 23, 2018[,] would not be time-barred" under the one-year limitation provision because that period is within one year of her filing of the suit. (Opening Br. at 16.) But once again, she is mistaken. "The general rule is that an occurrence is determined by the cause or causes of the resulting injury." *Liberty Mut. Ins. Co. v. Treesdale, Inc.*, 418 F.3d 330, 334 (3d Cir. 2005). When considering the cause or causes of the injury, "the court asks if there was but one proximate,

9

uninterrupted, and continuing cause which resulted in all of the injuries and damage." *Id.*

Here, Nelson's property was continuously damaged by water entering the home where the edge of the roof meets the top of the outer wall. Each time it rained, water entered the home and caused damage, but that constituted a continuation of damage from a single proximate cause. *See id.* at 335 ("The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. *As long as the injuries stem from one proximate cause there is a single occurrence.*" (emphasis added)); *see also Appalachian Ins. Co. v. Liberty Mut. Ins. Co.*, 676 F.2d 56, 61 (3d Cir. 1982) (holding the same).

Indeed the policy itself defines "occurrence" as "an accident, including exposure to conditions, which results in … property damage[,]" and that "[r]epeated or continuous exposure to the same general conditions is considered to be one occurrence." (J.A. at 82.) As in our earlier decisions concerning similar policy definitions, Nelson's policy "contemplate[d] that one occurrence may have multiple and disparate impacts on [her] and that injuries may extend over a period of time." *Liberty Mut. Ins. Co.*, 418 F.3d at 335.

While this proximate cause test "is appropriate for determining whether there is a single occurrence or multiple occurrences, it is not applicable in determining when an occurrence takes place." *Id.* at 337 (quoting *Appalachian Ins. Co.*, 676 F.2d at 61). "[T]hat inquiry is governed by an 'effect' test" because "the determination of when an occurrence happens must be made by reference to the time when the injurious effects of

10

the occurrence took place." *Id.* (internal quotation marks and citation omitted). Under this test, when the injurious effects are continuous and ongoing, "the occurrence takes place when the injuries first manifest themselves." *Id.* (citation omitted). "[T]he time or date the direct physical damage or loss occurs for purposes of the suit limitations clause[] … is ascertained by determining when the injurious effects first manifest themselves in a way that would put a reasonable person on notice of injury." *Caln Vill. Assocs., L.P. v. Home Indem. Co.*, 75 F. Supp. 2d 404, 411 (E.D. Pa. 1999). The question is not whether Nelson was aware of the exact cause for the damage on April 3, 2018; what matters is that the damage manifested itself and that she knew of damage on that date. *See id.* ("[F]or purposes of determining when an occurrence happens, an insured need not be informed of the exact cause of the injury.") That is why the policy's limitations period began to run on April 3, 2018. Because Nelson did not commence suit within one year of that date, her breach of contract claim is time-barred, and the District Court's grant of summary judgment to State Farm was appropriate.

> **B.** **Nelson failed to provide clear and convincing evidence to support a finding of bad faith.**[9]

Nelson argues that there is sufficient evidence to support her bad faith claim and

---

[9] "[T]he determination of whether a given factual dispute requires submission to a jury must be guided by the substantive evidentiary standards that apply to the case." *Anderson*, 477 U.S. at 255. Therefore, with respect to Nelson's bad faith claim, "where the clear and convincing evidence standard applies," we, reviewing de novo, "must inquire whether the evidence presented is such that a jury applying that evidentiary standard could find only for one side." *Justofin v. Metro. Life Ins. Co.*, 372 F.3d 517, 522 (3d Cir. 2004).

11

so the District Court erred in granting summary judgment to State Farm on that claim.[10]

We disagree.

In Pennsylvania, to prevail on a claim of statutory bad faith under 42 Pa. Cons. Stat. § 8371, "a plaintiff must demonstrate, by clear and convincing evidence, (1) that the insurer did not have a reasonable basis for denying benefits under the policy and (2) that the insurer knew or recklessly disregarded its lack of a reasonable basis in denying the claim." *Rancosky v. Wash. Nat'l Ins. Co.*, 170 A.3d 364, 377 (Pa. 2017); *see also Klinger v. State Farm Mut. Auto. Ins. Co.*, 115 F.3d 230, 233 (3d Cir. 1997). Mere negligence or bad judgment does not amount to bad faith. *Polselli v. Nationwide Mut. Fire Ins. Co.*, 23 F.3d 747, 751 (3d Cir. 1994). "Bad faith conduct also includes lack of good faith investigation into fact[s], and failure to communicate with the claimant." *Brown v. Progressive Ins. Co.*, 860 A.2d 493, 501 (Pa. Super. Ct. 2004) (internal quotation marks and citation omitted).

Here, the record demonstrates that State Farm conducted a sufficiently thorough investigation to provide a reasonable basis for denying Nelson's claim. State Farm began the claim review process promptly after receiving notice of the claim, and it sent an employee to inspect the property with Pfister in early January 2019. Then, it sought information about the tarp, and as soon as it was able to confirm that Scopewell had not inspected the roof, it scheduled a roof inspection. It then issued its denial of coverage

---

[10] No one has suggested that the bad faith claim depends upon the success of Nelson's breach-of-contract claim.

12

letter within two weeks of receiving the inspection report, and before the one-year limitations period had expired. Further, it provided timely and periodic updates to Nelson about the status of her claim, regularly reminding her of the contractual deadline for filing suit.

State Farm's denial letter explained that "[b]ased on [its] investigation and inspection of the damages to the home," it determined there was "no coverage for the damage to the rear exterior wall, or the resulting water damage to the upstairs bedroom and kitchen." (J.A. at 243.) It concluded that there was no coverage for the damage to the exterior wall because it was "related to design, construction or maintenance." (J.A. at 243.) And "the water damage that has resulted in rot and deterioration … is not covered, as well as that which has resulted in the development of mold/fungus." (J.A. at 243.)

It had a reasonable basis to deny Nelson's claim on these grounds. Nelson's policy provided coverage for "accidental direct physical loss[.]" (J.A. at 87.) Wear, tear, deterioration, rot, mold, poor maintenance, and construction defects were specifically identified as "Losses Not Insured" under the policy and, therefore, not included as "accidental direct physical loss[.]" (J.A. at 76-77, 87, 89-91.) ServiceMaster, the company Nelson contracted to perform the water remediation work, concluded that a "mechanical failure or defect in the overhang of the roof" caused the damage. (J.A. at 8, 188.) RMS, the independent contractor State Farm hired to perform an inspection arrived at a similar conclusion, namely that "the drip edge on the roof without an overhang is not in the gutter, but is on the rear elevation of the structure above the affected areas in the home." (J.A. at 240.) Those reports arguably provide a reasonable basis to deny

13

Nelson's claim as being caused by mechanical failure or defect, which are not covered under the policy.

Further, Nelson's argument that State Farm is liable for the "resulting loss" from "poor maintenance, wear and tear and poor workmanship" is also without merit. (Opening Br. at 31-32.) The policy provides that State Farm "insure[s] for any resulting loss from" many of the "Losses Not Insured," "*unless the resulting loss is itself a Loss Not Insured*[.]" (J.A. at 89-91) (emphasis added). Nelson's resulting losses consisted of wet rot, deterioration, and mold, all of which are themselves "Losses Not Insured" or not covered under the policy.

In short, no reasonable jury could conclude on this record that Nelson had clear and convincing evidence that State Farm had no reasonable basis for denying benefits under the policy. We will therefore affirm the District Court's grant of summary judgment to State Farm on that claim.

## III. CONCLUSION

For the foregoing reasons, we will affirm.