**National Union Fire Insurance Co. of Pittsburgh v. Sharon Regional Health System**

C.P. of Allegheny County, no. GD01-14026.

*P. Brennan Hart* and *Russell J. Ober Jr.,* for plaintiff.

*Joseph P. Connor III, Christine L. Donohue, Randy Hareza, Neil R. Rosen* and *Edward B. Wood,* for defendants.

WETTICK JR., *A.J.,* December 1, 2004—Five motions for summary judgment and/or partial summary judgment are the subject of this opinion and order of court.[1]

This lawsuit arises out of an underlying medical malpractice action brought in the Common Pleas Court of Mercer County by Marie and Joseph Viola against a radiologist and his professional corporation, an obstetrician and his professional corporation, and Sharon Regional Health System, in its capacity as the employer of

---

1. Sharon Regional Health System has filed a motion for summary judgment on its breach of contract counterclaim, a motion for summary judgment on Count I of its first amended and restated complaint to join additional defendant Nichols & Associates Inc., a motion for partial summary judgment regarding agency, and a motion for summary judgment on the complaint. National Union Fire Insurance Company of Pittsburgh has filed a motion for summary judgment, or in the alternative, for partial summary judgment.

the radiologist and the obstetrician.[2] The lawsuit, filed on May 21, 1999, was based on a failure to detect breast cancer that was allegedly apparent on the radiograph of a mammogram taken on August 20, 1994 and on the radiograph of a mammogram taken on October 4, 1996. On April 20, 2001, the jury returned a verdict of $12,844,000.

From September 1, 1991 to September 1, 1992, National Union Fire Insurance Company of Pittsburgh provided excess insurance coverage to Sharon. Sharon was one of a group of hospitals that were part of a pooled program. Sharon's policy was renewed each year through September 1, 1999.

This lawsuit arises out of National Union's refusal to provide coverage to Sharon. National Union denied coverage on the ground that National Union was never notified of the *Viola* litigation until after the rendering of the verdict.

National Union commenced this lawsuit by filing a complaint seeking a declaratory judgment that it had no duty to provide coverage because of Sharon's failure to provide timely notice of the *Viola* claim. Sharon's answer includes a counterclaim seeking recovery on the ground that National Union's defense of a lack of timely notice has no merit.

## I.

The motions for summary judgment filed by the parties include National Union's motion for the entry of a judgment declaring that National Union has no duty to

2. The claim against Sharon was based solely on a theory of ostensible agency.

provide coverage because it was not timely notified of the lawsuit, and Sharon's motion for the entry of a judgment for the payments due under the policy. Both motions are based on the notice requirements of the insurance policies, evidence as to what notice was provided, and the case law governing noncompliance with an insurance policy's notice provisions.

Sharon contends that the evidence establishes, as a matter of law, that it provided timely notice of the *Viola* lawsuit to National Union by furnishing notice of the lawsuit to Nichols & Associates Inc. within one week after the filing of the lawsuit; according to Sharon, Nichols was National Union's agent for the purpose of receiving notice of claims against Sharon.

National Union contends that the evidence establishes just the opposite. It never had notice of the lawsuit until after the verdict was rendered and the failure to give notice bars recovery.

There is credible evidence that would permit a jury to find that Nichols had timely notice of the *Viola* lawsuit, through a written notice or through loss runs. However, there is also credible evidence that would permit a jury to find that neither Nichols nor National Union had notice of the *Viola* lawsuit until after the verdict was rendered. There is also credible evidence that would support either a finding that Nichols was only Sharon's agent for all purposes, including receipt of notices of lawsuits and loss runs, or a finding that Nichols was a dual agent (*i.e.,* an agent for Sharon and National Union), at least for purposes of receipt of notices of lawsuits. For these reasons, neither party may obtain a summary judgment based on that party's evidence as to whether Nichols had

(or should have had) notice of the *Viola* lawsuit and as to the role of Nichols vis-à-vis National Union.

For purposes of determining the issues that will be tried, I will next consider the significance of a finding in National Union's favor that Sharon did not comply with the notice provisions of the applicable policy. It is National Union's position that it had no obligation to provide coverage unless it was notified of the *Viola* lawsuit by September 1, 1999, this being the expiration date of the final policy which National Union issued to Sharon. It is Sharon's position that noncompliance with the notice provisions of the applicable insurance policy is a defense only upon a showing of actual prejudice.[3]

National Union's argument that compliance with the policy's notice provisions is a prerequisite to recovery is based on its contention that Sharon was covered for the *Viola* claim only by the following endorsement of the 1998-1999 policy:

"Endorsement no. 3

"Page 1 of 5

"This endorsement, effective 12:01 a.m., September 1, 1998, forms a part of policy no. *** ** ** issued to: VHA Pennsylvania Inc. and Participating Hospitals by: National Union Fire Insurance Company of Pittsburgh, PA.

---

3. Sharon supports its position by citing Pennsylvania appellate court case law which establishes that for an occurrence-based general liability policy, late notice to an insurance company releases the insurance company from its obligations under the policy only where the insurance company has been prejudiced by untimely notice. See *Brakeman v. Potomac Insurance Co.,* 472 Pa. 66, 371 A.2d 193 (1977); *Metal Bank of America Inc. v. Insurance Co. of North America,* 360 Pa. Super. 350, 520 A.2d 493 (1987).

"This is a claims-made form. Please review the coverage carefully and discuss with your insurance agent or broker.

"Hospital professional liability—(Claims made) supplement

"(I) In consideration of the premium charged, it is agreed that coverage afforded by this policy is hereby extended to include the following additional coverage, *hospital professional liability:*

"The company will pay on behalf of the insured the ultimate net loss in excess of either the self-insured retention or the retained limit or designated underlying insurance as defined by the schedule of underlying insurance, which the insured shall become legally obligated to pay as damages because of injury caused by a 'medical incident' occurring on or after the retroactive date shown below and for which claim is first made against the insured and reported to the company during the policy period." National Union's appendix, exhibit 17.

National Union correctly states that the hospital professional liability coverage provided through this endorsement is claims based. The endorsement specifically provides that National Union will provide coverage for claims in the policy year "for which claim is first made against the insured and reported to the company during the policy period." In this case, the claim was first made through the filing of a lawsuit on May 21, 1999. Thus, the claim was covered by this endorsement covering the period between September 1, 1998 and September 1, 1999.

The policy specifically provides coverage only for a claim initially raised in the policy period which is "re-

ported to the company during the policy period." There is considerable merit to National Union's position that the notice-prejudice rule governing occurrence policies should not be extended to claims-made policies. See the numerous federal court cases and cases of other state courts cited at pages 27-28 of National Union's brief in support of motion for summary judgment or, in the alternative, for partial summary judgment which support the position that a claims-made policy protects the insured only as to claims reported to the insurance company during the policy period.

The primary feature of occurrence coverage is that the insurance company continues to be exposed for injuries occurring during the life of the policy that are not discovered until later—perhaps as many as 10 to 20 years after the policy's expiration date. The primary feature of claims-made coverage, on the other hand, is the inclusion of a cutoff date after which the insurance company has no underwriting risks. A claims-made policy includes the notice requirement as a trigger for coverage in order to achieve the purpose of a cutoff date. See *Consulting Engineers Inc. v. Insurance Co. of North America,* 710 A.2d 82, 85 (Pa. Super. 1998), *aff'd per curiam* on the basis of the Superior Court opinion, 560 Pa. 247, 743 A.2d 911 (2000), where the court stated that an occurrence policy protects the policyholder for any act done while the policy is in effect and a claims-made policy protects the holder only against claims made during the life of the policy.

As I previously stated, National Union's argument that it need not show prejudice is based on its contention that the claim arising out of the *Viola* litigation is covered only by Endorsement 3 to the September 1, 1998-Sep-

tember 1, 1999 policy. Sharon disputes this contention; it is Sharon's position that National Union's excess policies throughout the period between September 1991 and September 1999 also provide occurrence coverage. If this is so, Sharon can rely on the case law holding that the failure to timely report to the insurance company a claim raised under an occurrence policy is a basis for denying coverage only if the insurance company can establish actual prejudice. See *Brakeman v. Potomac Insurance Co., supra,* 472 Pa. at 76-77, 371 A.2d at 198, and its progeny.

If Sharon is correct that each of the National Union policies also provides coverage for claims seeking damages for personal injuries arising out of an occurrence, the *Viola* claims would be covered by the September 1, 1996-September 1, 1997 policy. This is so because claims in the underlying action were based on a misdiagnosis in October 1996. Pennsylvania case law holds that plaintiff sustained personal injury when her doctors failed to diagnose her cancer in October 1996. *D'Auria v. Zurich Insurance Co.,* 352 Pa. Super. 231, 507 A.2d 857 (1986) (personal injury occurs when a patient is misdiagnosed).

The National Union policy covering the period between September 1, 1996 and September 1, 1997 is exhibit 1 to defendant Sharon Regional Health System's response to plaintiff National Union's motion for summary judgment, or in the alternative, for partial summary judgment (Sharon's response). The limit of insurance is $25 million per occurrence. The coverage provision in the main body of the 1996-1997 policy provides for the insurance company to pay on behalf of the insured the net loss in excess of the retained limit for

liability imposed upon the insured because of personal injury caused by an occurrence:[4]

"I. Coverage. To pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limit as hereinafter defined, which the insured shall become legally obligated to pay as damages for liability imposed upon the insured by law, or liability assumed by the insured under contract because of (i) personal injury, (ii) property damage, or (iii) advertising liability, as defined herein caused by an occurrence." Sharon's response, exhibit 1 at 5.

"The term *personal injury* is defined to include bodily injury, sickness, disease . . . ." Exhibit 1 at 9. An *occurrence* is defined in exhibit 1 at 10 as follows:

"(H) Occurrence—With respect to personal injury and property damage, the term 'occurrence' means *an event,* including continuous or repeated exposure to conditions, *which result in personal injury* or property damage *during the policy period,* neither expected nor intended from the standpoint of the insured. All personal injury or property damage arising out of the continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence." (emphasis added)

There is no provision in the main body of the policy excluding professional services from personal injury coverage.

The 1996-1997 policy contains an endorsement (Endorsement 2) which is virtually identical to Endorsement 3 of the September 1998-1999 policy:

---

4. All of the policies that National Union issued between September 1, 1991 through September 1, 1999, contain the same provisions.

"This endorsement, effective 12:01 a.m. September 1, 1996 forms part of policy no. ** *** ** ** issued to VHA Pennsylvania Inc. and Participating Hospitals by National Union Fire Insurance Company of Pittsburgh, PA.

"This is a claims-made form. Please review the coverage carefully and discuss with your insurance agent or broker.

"Hospital professional liability—(Claims-made) supplement

"(I) In consideration of the premium charged, it is agreed that coverage afforded by this policy is hereby extended to include the following additional coverage, *hospital professional liability:*

"The company will pay on behalf of the insured the ultimate net loss in excess of either the self-insured retention or the retained limit or designated underlying insurance as defined by the schedule of underlying insurance, which the insured shall become legally obligated to pay as damages because of injury caused by a 'medical incident' occurring on or after the retroactive date shown below and for which claim is first made against the insured and reported to the company during the policy period.

"Retroactive date: See Endorsement no. 1." Sharon's response, exhibit 1 at 15.

National Union contends that the claims-made endorsement (Endorsement 2 of the 1996-1997 policy) replaces the occurrence-based coverage provided in the main body of the policy with the claims-made protection provided in the endorsement. Sharon contends that National Union's proposed construction of the policy is inconsistent with the clear language of the policy. I agree.

The main body of the policy expressly provides that National Union will pay on behalf of the insured the ultimate net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages because of the personal injury caused by an occurrence. There is no language in either the main body of the policy or in any of the endorsements limiting the scope of this coverage. Consequently, the coverage provision in the main body covers the *Viola* claim.

Furthermore, the language of Endorsement 2 providing for claims-made coverage is consistent with Sharon's position and inconsistent with National Union's position. The heading refers to the coverage as supplemental coverage: *"Hospital professional liability— (Claims-made) supplement."* The first sentence of Part I of the endorsement provides that in consideration of the premium charged, "coverage afforded by this policy is hereby *extended* to *include* the following *additional* coverage." (emphasis added)

National Union contends that I should ignore the clear language of the main body of the policy and of the endorsement because it would have been irrational for Sharon to have purchased claims-made coverage if it was already protected through an occurrence-based policy. Even assuming that it would have been irrational for Sharon to have purchased this additional coverage, the clear language of a policy, including the endorsement, governs coverage issues. See *Madison Construction Co. v. Harleysville Mutual Insurance Co.,* 557 Pa. 595, 735 A.2d 100, 106 (1999).

Furthermore, there is not a complete overlap between occurrence coverage and claims-based coverage. Sharon could have been sued in May 1999 for an injury caused

by a misdiagnosis of a slow growing cancer that occurred in 1987, or Sharon could have been sued in May 1999 by the guardian of an 18 year old who is severely brain damaged because of alleged negligence during the child's birth. In these examples, Sharon would have had no coverage through the occurrence-based coverage provided by the policies National Union issued covering the period between September 1991 and September 1999; however, there would be coverage under the claims-made endorsement.

For these reasons, even if Sharon failed to furnish timely notice of the *Viola* lawsuit to National Union, it may recover unless National Union can establish prejudice.[5]

Sharon correctly states that in *Commercial Union Insurance Co. v. Walbrook Insurance Co.,* 7 F.3d 1047 (1st Cir. 1993), the court addressed the same issues that I am addressing. That case also involved coverage for a professional negligence claim. The main body of the umbrella insurance policy provided for coverage for all activities which result in occurrences for which the insured must respond in damages. The policy also included an engineers professional liability (EPL) endorsement. The main body provided coverage on an occurrence basis and

---

5. Sharon does not concede that it failed to comply with the notice provisions of the main policy governing the occurrence-based coverage. See Sharon's response, exhibit 1 at 11, condition 4, which requires Sharon to furnish notice only when it may reasonably conclude that an occurrence covered by the policy is likely to involve injuries or damages that will involve the excess policy. (It is apparently Sharon's position that the provision requiring the insured to provide quarterly loss runs (Sharon's response, exhibit 1, Endorsement 8 at 26) applies only to claims raised under the claims-made professional services endorsement).

the endorsement covered only claims made during the policy period.

The incident that gave rise to the underlying tort suit was an explosion which occurred within the policy period. However, no claims were filed within this period.

The insured contended that it could recover under the main body of the policy because the explosion was an occurrence as defined by the policy. The insurance company argued that the claims-made endorsement was the exclusive provision for affording coverage. The endorsement provided that the policy is "extended" to include EPL as more fully described.

The court, relying on the clear language of the policy, ruled that EPL coverage was additional coverage. It also ruled that extrinsic evidence could not be considered because the contract language was unambiguous.

In summary, the remaining issues that will be tried in the litigation between National Union and Sharon (in addition to Sharon's bad faith claims) are:

"(1) whether Nichols had notice (or was contractually obligated to have had notice) of the *Viola* lawsuit;

"(2) if Nichols had notice (or was obligated to have had notice) of the *Viola* lawsuit, whether Nichols should be characterized as an agent of National Union;

"(3) assuming that Nichols did not have notice of the lawsuit, whether Sharon's failure to give notice of the *Viola* lawsuit to Nichols and/or National Union until after the verdict was rendered breached any notice requirements of the 1996-1997 policy; and

"(4) if Sharon breached notice requirements of the 1996-1997 policy, whether National Union was prejudiced by the untimely notice."

## II.

I am denying the portion of Sharon's motion for summary judgment seeking a ruling that as a matter of law the evidence upon which National Union relies cannot support a finding that National Union was prejudiced by the untimely notice (assuming a fact-finder concludes that Sharon failed to provide timely notice). When I weigh the evidence upon which National Union relies in the manner most favorable to National Union, it may support a finding that National Union was prejudiced by the untimely notice.

## III.

I am denying Sharon's motion for summary judgment based on Sharon's contention that the evidence requires a finding that Nichols breached its obligations to Sharon to forward notice of the *Viola* lawsuit to National Union and/or to collect, analyze, and forward to National Union loss runs that would have included the *Viola* claim. Under the *Nanty-Glo* rule, Sharon cannot rely on the affidavit of Ms. Peterson, and there is substantial evidence which a fact-finder may find to be credible supporting Nichols' position that it did not breach any obligation owed to Sharon.

## IV.

After the verdict was rendered and Sharon's motion for post-trial relief was denied, Sharon filed an appeal to the Pennsylvania Superior Court. Shortly thereafter, Sharon and the Violas entered into an agreement which included Sharon's withdrawing the appeal.

The evidence most favorable to Sharon supports findings that (1) Sharon was not likely to prevail in the Penn-

sylvania appellate courts; (2) Sharon lacked the resources to post a bond in order for the appeal to stay execution proceedings; and (3) if the Violas proceeded with execution proceedings, Sharon may have been unable to continue functioning as a hospital. In order to allow Sharon to continue as a hospital, Sharon and the Violas entered into negotiations which resulted in a December 28, 2001 agreement regarding judgment under which Sharon made an immediate payment of $5.1 million, Sharon agreed to pay the additional amount of the judgment from proceeds recovered from National Union, Sharon agreed to withdraw its appeal and the Violas agreed not to execute against other assets of Sharon to recover any unpaid portion of the verdict. See National Union's appendix to motion for summary judgment or, in the alternative, for partial summary judgment, exhibit 32.

In its motion for partial summary judgment, National Union seeks a ruling that if it has a duty to indemnify Sharon, it is obligated to pay only the $5.1 million that Sharon paid; it has no obligation to pay the remainder of the judgment because the Violas agreed that they would not execute against Sharon's assets, other than its claim against National Union, to recover the remainder of the judgment.

National Union contends that its position is supported by language within the insurance policy limiting recovery to the money Sharon paid. The coverage provision of the policy, however, provides for the insurance company to "pay on behalf of the insured that portion of the ultimate net loss in excess of the retained limit . . . which the insured shall become legally obligated to pay as damages for liability imposed upon the insured by law, or liability assumed by the insured under contract." Shar-

on's response, exhibit 1 at 5. Under this provision, National Union agreed to pay that amount which Sharon became legally obligated to pay (the full amount of the judgment). Nothing in this language suggests that National Union is excused from paying the full amount that Sharon became legally obligated to pay if Sharon was able, through negotiations, to protect its assets, other than its claim against National Union, from execution.

Sharon entered into the agreement with the Violas under which it agreed to pursue its claims against the insurance company in exchange for a promise that the insurance company's obligation to the insured is the only asset that the Violas will pursue only because National Union did not honor Sharon's demand that National Union pay the excess portion of the judgment. If National Union was obligated to pay the excess portion of the judgment, the law will not reward it for breaching its obligation by invalidating an agreement under which the insured was able to protect its assets through this agreement with its judgment creditor.

*Dennis v. New Amsterdam Casualty Co.,* 216 Pa. Super. 320, 264 A.2d 436 (1970), is the only Pennsylvania appellate court case cited by National Union to support its position. In that case, a truck driver for Commercial Concrete, an insured of New Amsterdam, ran over a fellow employee during the course of his employment. The administrator of the estate of the fellow employee filed an action in federal court against the driver and Commercial Concrete. New Amsterdam refused to provide coverage to the driver on the ground that the policy excluded obligations for which the insured may be liable under the workers' compensation laws.

The driver, represented by private counsel, entered into a settlement agreement with the estate, settling the claim for $17,500. Under the settlement agreement, the driver would pay the sum of $1,000 and institute suit against New Amsterdam to recover the full settlement figure of $17,500, and any recovery from New Amsterdam would be the sole source of payment of the $16,500 balance.

Pursuant to this agreement, the driver sued New Amsterdam seeking indemnification under the policy New Amsterdam issued to the driver's employer. The trial court ruled that New Amsterdam had no duty to indemnify the driver. The Superior Court affirmed on this issue, stating that, without question, the liability of the employee-driver would be limited to recovery under the workers' compensation laws:

"The order of the court below with regard to New Amsterdam's liability for indemnification must be affirmed both because the policy does not insure against the type of loss herein set forth and also because under the settlement agreement, Dennis is not obligated to pay the same, this being a secondary and minor consideration." *Id.* at 326, 264 A.2d at 439.

National Union relies on the last portion of the quotation in *Dennis.* However, the *Dennis* court used this language in connection with a claim of the insured for indemnification of a settlement that was voluntarily made to satisfy a claim that the law does not recognize. The court was only saying, as a "secondary and minor consideration," that an insurance company has no duty to indemnify an insured who settles a claim that the law does not recognize. *Dennis* has no applicability to the fact situation in the present case in which a judgment has been entered against the insured pursuant to a trial of the claim.

I also find National Union's position to be without merit for other reasons. I would characterize the agreement as a partial assignment by Sharon to the Violas of its breach of contract claim against National Union. Under Pennsylvania law, an insured's claims against his or her insurer in the nature of a breach of contract are assignable. *Brown v. Candelora,* 708 A.2d 104, 112-13 (Pa. Super. 1998); *Alfiero v. Berks Mutual Leasing Co.,* 347 Pa. Super. 86, 500 A.2d 169 (1985).

In *Alfiero,* an excess carrier refused to participate in the lawsuit or settlement discussions. An amicable settlement resulted in a judgment in the plaintiff's favor against the defendant in the amount of $950,000, and the underlying insurance company paid its limits of $100,000. The settlement agreement provided that the defendant assigned to the plaintiff in the underlying action all its rights against the excess carrier and in return the plaintiff in the underlying action agreed that it would not expose the defendant's assets to satisfy the balance of the judgment.

In the lawsuit brought by the plaintiff in the underlying action against the excess carrier, the excess carrier contended that its duty to indemnify its insured had been extinguished because the plaintiff had effectively released the insured from any further liability to pay the judgment. The trial court rejected this contention; it ruled that the excess carrier had breached its contractual obligations to its insured, that the settlement amount was reasonable and that the plaintiff could recover from the excess carrier the unsatisfied portion of the verdict ($850,000). The Superior Court affirmed the ruling, stating: "[Plaintiff] did not agree to release [the defendant] from further liability. Its agreement was to seek recovery of an agreed debt from a specific asset, *i.e.,* the con-

tractual rights owed to [the defendant] by [the excess insurer]." *Id.* at 90, 500 A.2d at 171. The Superior Court held that the defendant in the underlying action "could properly negotiate a settlement according to terms intended to preserve its assets from execution." *Id.* at 92, 500 A.2d at 172.

Also, see *Trustees of the University of Pennsylvania v. Lexington Insurance Co.,* 815 F.2d 890 (3d Cir. 1987), where the court ruled that a two-tier settlement is permissible under Pennsylvania law.[6]

## V.

In its motion for partial summary judgment, National Union contends that it should not be required to indemnify Sharon for delay damages because it had no opportunity to settle the case.[7] However, the National Union policy provides that National Union will pay the net loss in excess of the retained limit which the insured shall become legally obligated to pay as damages. Damages for delay in actions for bodily injury, death or property damages, Pa.R.C.P. 238, are part of the insured's obligation. Under the clear language of the policy, National Union has a duty to pay this amount. Furthermore, there

---

6. Because the agreement in the case before this court was reached after a jury trial and the entry of a judgment, this case does not present the issue of whether the settlement amount was fair and reasonable. Where an agreement preserving the insured's assets is reached prior to trial, there is a concern that the defendant might have cared more about protecting its assets than arriving at a settlement figure that reflects the least amount of money for which the plaintiff was prepared to settle the case.

7. I do not address the issue of whether National Union may raise this argument in addressing the issue of whether it was prejudiced by the late notice (assuming that timely notice was not furnished).

is nothing in Rule 238 that would support a different ruling.

The case law (see *e.g., Woods v. Ellerbe,* 389 Pa. Super. 281, 566 A.2d 1245 (1989)) addressing the issue of whether delay damages are payable where the policy limits have been paid by the insurance carrier are not applicable because the full amount of the *Viola* judgment, including delay damages, are within National Union's policy limits.

## VI.

In its motion for partial summary judgment, National Union seeks a ruling that as a matter of law Sharon is not capable of establishing bad faith under 42 Pa.C.S. §8371.

National Union contends that bad faith cannot be shown because it has never denied coverage. Instead, upon learning that there were substantial questions about Sharon's compliance with notice requirements, it promptly issued a reservation of rights letter and initiated this declaratory judgment action.

However, National Union's argument regarding notice is primarily based on its contention that only the endorsement providing claims-made hospital professional liability coverage is available to Sharon for the *Viola* claim.

On the face of the record, I cannot make a finding that Sharon is incapable of establishing bad faith.

For these reasons, I enter the following order of court:

## ORDER

Upon consideration of the various motions for summary judgment, it is ordered that:

(1) Summary judgment is granted in Sharon Regional Health System's favor as to whether National Union Fire Insurance Company of Pittsburgh's 1996-1997 policy may provide coverage and as to whether National Union may be released from its obligations under this policy only upon a showing of untimely notice and prejudice; and

(2) the remaining motions for summary judgment are denied.