NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3887
_____

TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA,
f/k/a The Travelers Indemnity Company of Illinois

v.

ROBERT K. MERICLE;
MERICLE CONSTRUCTION, INC.,
                              Appellants

_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civil Action No. 3-09-cv-01747
(Honorable A. Richard Caputo)
_____

Argued January 10, 2012

Before:  SCIRICA, RENDELL and SMITH, *Circuit Judges*.

(Filed: June 20, 2012)

R. TED CRUZ, ESQUIRE (ARGUED)
Morgan, Lewis & Bockius
1000 Louisiana Street, Suite 4000
Houston, Texas 77002

RICHARD F. McMENAMIN, ESQUIRE
Morgan, Lewis & Bockius
1701 Market Street
Philadelphia, Pennsylvania 19103

HOWARD M. RADZELY, ESQUIRE
Morgan, Lewis & Bockius

1111 Pennsylvania Avenue, N.W.
Suite 800 North
Washington, D.C. 20004

KIMBERLY D. BORLAND, ESQUIRE
Borland & Borland
69 Public Square, 11th Floor
Wilkes-Barre, Pennsylvania 18701
      Attorneys for Appellants

SAMUEL J. ARENA, JR., ESQUIRE (ARGUED)
KARL S. MYERS, ESQUIRE
Stradley, Ronon, Stevens & Young
2600 One Commerce Square
2005 Market Street
Philadelphia, Pennsylvania 19103
      Attorneys for Appellee

_____

OPINION OF THE COURT
_____

SCIRICA, *Circuit Judge*.

Travelers Property Casualty Company sought a declaratory judgment that a commercial general liability insurance policy issued to Robert Mericle and Mericle Construction did not oblige it to defend or indemnify Mericle in a lawsuit brought by the victims of a corrupt kickback scheme. The District Court found Travelers had no duty to defend or indemnify Mericle and entered judgment in favor of Travelers. For the following reasons, we will affirm.

I

The underlying complaint stems from a tragic judicial kickback scheme. Mark Ciavarella and Michael Conahan, two judges of the Luzerne County Court of Common Pleas, engaged in a scheme exploiting and debasing their position as judges in

2

adjudicating juvenile cases. Each accepted money from Robert Mericle, the owner of Mericle Construction and builder of two private juvenile facilities, and others[1] in exchange for facilitating the construction of private juvenile detention facilities and then imposing harsh sentences on juveniles in order to ensure the facilities would be used. As a result of Mericle's role in the illegal scheme, several civil suits, consolidated in the Master Individual Complaint ("MIC") and the Master Class Action Complaint ("MCAC"), were filed by the aggrieved juveniles against Mericle.[2]

The case before us is a dispute about insurance coverage. Robert Mericle and Mericle Construction (collectively "Mericle") had an insurance policy with Travelers Property Casualty Company of America ("Travelers"). Under the General Liability section of the policy, coverage is provided for claimed damages of "Bodily Injury and Property Damage" (Coverage A) or "Personal and Advertising Injury" (Coverage B). The policy only applies to "Bodily Injury and Property Damage" caused by an "occurrence" taking place during the policy period. The policy defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Moreover, the policy excludes coverage for "bodily injury"

_____

[1] Two of the named parties in the complaint are parties in the related appeals docketed at Nos. 10-2833 and 10-2887, *Colony Insurance Co. v. MAYS and Powell*, and Nos. 10-4198 and 10-4780, *General Star Indemnity Co. v. MAYS and Powell*.

[2] On February 28, 2012, the District Court conditionally approved the class and preliminarily approved a settlement agreement. Under the agreement, Mericle agreed to pay $17.75 million to a settlement fund to compensate the juvenile victims who suffered physical or psychological harm. A hearing on final settlement will be held on September 10, 2012. *See* Order Conditionally Certifying Settlement Class and Preliminarily Approving Proposed Settlement, *Wallace v. Powell*, No. 3:09-CV-0286 (M.D. Pa. 2012) ECF No. 1084.

3

"expected or intended from the standpoint of the insured" under the exclusions articulated in the policy. The policy also provides coverage for claimed damages of "Personal and Advertising Injury," which the policy defines as "injury, other than 'bodily injury', arising out of one or more of the following offenses: (a) False arrest, detention, or imprisonment … ." Coverage is excluded for "personal injury" that "aris[es] out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured."

Mericle tendered the complaints to Travelers to defend. Travelers denied coverage and filed a declaratory judgment action against Mericle seeking a determination that it did not have a duty to defend or indemnify with respect to the claims. Both Mericle and Travelers filed motions for summary judgment.

The District Court denied Mericle's motion and granted summary judgment in favor of Travelers, holding that because the complaint alleged only intentional acts, there was no "occurrence" to trigger the policy under Coverage A. The court also found coverage was excluded under Coverage B because the allegations triggered the knowing violation of another's right and the violation of penal statute exclusions. Mericle timely appealed.[3]

## II

An insurer's obligation to provide a defense for claims asserted against its insured is contractual, and the language of the policy will determine whether an insurer has a duty

---

[3] The District Court had jurisdiction under 28 U.S.C. § 1332(a). We have jurisdiction under 28 U.S.C. § 1291. Pennsylvania law governs this diversity case.

4

to defend.  Under Pennsylvania law, the duty to defend is determined solely by the allegations contained within the four corners of the complaint. *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 896-97 (Pa. 2006).  If there is one claim that falls within the policy, the insurer must defend the entire action. *D'Auria v. Zurich Ins. Co.*, 507 A.2d 857, 859 (Pa. Super. Ct. 1986).  But it is the facts alleged in the underlying complaint, not the cause of action pled, that will determine if there is coverage. *Donegal Mutual Ins. Co. v. Baumhammers*, 893 A.2d 797, 811 (Pa. Super. Ct. 2006) *aff'd in part and rev'd in part on other grounds*, 938 A.2d 286 (2007). The court should not inquire into or resolve factual disputes to determine whether an insurer's duty to defend has been triggered; all evidence is limited to the "language of the complaint against the insured." *Kvaerner Metals*, 908 A.2d at 896-97.

III

Mericle contends the District Court erred in four aspects: (1) finding the underlying complaints allege only intentional acts and not negligence; (2) finding that there was no "occurrence" under the policy so as to trigger coverage under Coverage A; (3) holding that the penal statute exclusion applied to deny coverage; and (4) holding that the knowing violation exclusion applied to deny coverage.  None of Mericle's contentions have merit. [4]

   1. *The underlying complaint does not contain allegations of negligence.*

---

[4] We exercise plenary review over a district court's decision resolving cross-motions for summary judgment.  *State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 110 (3d Cir. 2009).  We review a district court's interpretation of Pennsylvania state law *de novo*. *Koppers Co. v. Aetna Cas. & Sur. Co.*, 98 F.3d 1440, 1445 (3d Cir. 1996).

Mericle contends the District Court erred in finding Travelers had no duty to defend because the complaint includes allegations of negligence, triggering coverage under the policy. Mericle points to language in the complaint that "defendants knew or should have known and acted with deliberate indifference" to demonstrate claims of negligence. While Mericle is correct that the language "knew or should have known" typically sounds in negligence, we must look at the factual allegations and not the particular cause of action that is pled. *See Mut. Benefits Ins. Co. v. Haver*, 725 A.2d 743, 745 (Pa. 1999) ("[T]he particular cause of action that a complainant pleads is not determinative of whether coverage has been triggered. Instead, it is necessary to look at the factual allegations contained in the complaint."). When we look at the factual allegations in the complaint, we agree with the District Court that the allegations include only claims of intentional conduct.

The allegations in the complaint recite only intentional conduct to initiate and perpetuate a scheme for Mericle's individual financial benefit.[5] The following excerpts are representative of these allegations:

> ¶669 The consistent placement of youth at PA Child Care facilitated the subsequent construction of Western PA Child Care and the expansion of PA Child Care, directly benefiting PA Child Care, Western PA Child Care, and their owners and operators, as well as the contractor, Mericle, and

---

[5] During oral argument, Mericle argued that one interpretation of the complaint could conceivably be that "Mericle did a bribe at the outset that made it part of the whole broader conspiracy and … [Mericle] knew or should have known [that the juveniles were being unlawfully detained] …[and] it's not a knowing criminal conduct, it's negligence." Transcript at 5-6. But the factual allegations in the complaint do not support this contention.

6

Mericle Construction. All defendants had a financial interest in placing juveniles in PA Child Care and Western PA Child Care.

¶673 Ciavarella took steps to ensure that youth were routinely placed in detention, even in situations where detention was plainly not appropriate or over the objection of some probation officers. These steps were taken as part of the conspiracy with all other defendants.

¶674 The defendants had an interest in increasing overall adjudications and placements, not just adjudications that resulted in placements at PA Child Care and Western PA Child Care.

Because the complaint alleges only intentional conduct, we agree with the District Court that the complaint does not include claims of negligence that would trigger Travelers' duty to defend.

   2. *There was no "occurrence" to trigger the policy under Coverage A.*

Travelers' duty to defend is only triggered under Coverage A if there was an "occurrence." An "occurrence" is defined in the policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Pennsylvania Supreme Court has emphasized that the fortuity of the events in question is the key factor when determining whether there has been an accident. *Brenneman v. St. Paul Fire & Marine Ins. Co.*, 192 A.2d 745, 747 (Pa. 1963); *see also State Farm Fire & Cas. Co. v. Estate of Mehlman*, 589 F.3d 105, 111 (3d Cir. 2009). An accident is an unanticipated event, and therefore, an injury is "not 'accidental' if the injury was the natural and expected result of the insured's actions." *Donegal Mut. Ins. Co.*, 938 A.2d at 292. We must determine whether, from the perspective of the insured, the claims present the degree of fortuity contemplated by the definition of "accident." The burden is on the insured to prove that the claim is covered under the policy. *Miller v. Boston Ins. Co.*, 218 A.2d 275, 277 (Pa. 1966).

7

In finding no "occurrence," Mericle contends the District Court erred because "occurrence" turns on intent and there is no allegation it intended to cause bodily injury. The District Court held "the allegations in the underlying complaints … all consist of intentional and/or malicious conspiratorial conduct," and do not in any way suggest negligence. Therefore, any bodily injury was not accidental and not caused by an "occurrence." We agree.

An act is accidental if premised on the negligent acts of the insured. *Nationwide Mut. Fire Ins. Co. v. Pipher*, 140 F.3d 222, 225 (3d Cir. 1998). As discussed, the complaint contains no allegations that Mericle committed negligent acts, only intentional acts. Mericle acted deliberately to further and perpetuate the conspiracy and the resulting injuries to the juvenile victims were a natural consequence. Accordingly, there is no "occurrence" that would trigger Traveler's duty to defend.

*3. The Penal Statute Exclusion applies to exclude coverage under Coverage B.*

Under Coverage B, Travelers provided Mericle with insurance coverage for damages resulting from "personal injury," defined to include false imprisonment. The underlying complaint alleges the juveniles were victims of false imprisonment, triggering Travelers' duty to defend. But the policy excludes coverage for "personal injury" "arising out of the willful violation of a penal statute or ordinance committed by or with the consent of the insured." Mericle argues that neither exclusion is triggered because: (1) its violations of the penal code for payment and concealment of "referral fees" were too remote to satisfy the "arising out of" requirement; and (2) the claims were grounded in remedial, not penal, statutes.

8

*a. The "Arising Out Of" clause*

Mericle contends his actions, the payment and concealment of "referral fees," are too remote to plaintiffs' injuries to "arise out of" a violation of a penal statute triggering the exclusion. He claims that because he was not charged with crimes involving bribery or kickbacks, and it was this quid pro quo conduct that caused the injuries to the juveniles, the injuries could not "arise out of" his violation of a penal statute. He also contends that because the language "arise out of" is ambiguous, it must be construed against the insured to signify proximate causation. Furthermore, he argues that even under the broader "but for" standard, his conduct could not be said to have caused the injuries as the relationship between his conduct and the victims' injuries is far too remote.

Pennsylvania law states that "'arising out of' means causally connected with, not proximately caused by." *Roman Mosaic & Tile v. Aetna Cas. & Sur. Co.*, 704 A.2d 665, 669 (Pa. Super. Ct. 1997) (internal quotation marks and citation omitted). The phrase 'arising out of' has "been equated with 'but for' causation." *Id.*; *see also McCabe v. Old Republic Ins. Co.*, 228 A.2d 901, 903 (Pa. 1967) (phrase "arising out of," used in policy exclusion, was not ambiguous and indicated "but for" or "cause and result" relationship). We agree with the District Court that "arising out of" means "causally connected." We must therefore decide whether the complaint alleges a causal link between Mericle's actions and the plaintiffs' injuries.

Mericle contends that because he only pled guilty to one count of misprision of felony, which was unrelated to the quid pro quo conspiracy that caused the injuries, his violation of the penal statute was not causally connected to the injuries. But Mericle's

9

argument ignores the allegations in the complaint and focuses only on his plea agreement. The complaint alleges conduct that is criminal – instances of wire fraud, conspiracy, and other criminal acts. Because our analysis of Travelers' duty to defend is governed by the "four corners" of the complaint, Mericle's plea agreement is not determinative. The factual allegations in the complaint allege a causal link between Mericle's involvement in several criminal acts and the injuries to the juveniles. The District Court was correct to find the exclusion applicable.

b. *Penal Exception and Remedial Statutes*

In the alternative, Mericle argues the penal statute exclusion does not apply because the underlying claims are grounded in remedial statutes. Mericle points to *Humphreys v. Niagara Fire Ins. Co.*, 590 A.2d 1267 (Pa. Super. Ct. 1991), in which the Pennsylvania Superior Court found the criminal act exclusion inapplicable because the claim was grounded in the civil remedies section of the RICO statute and therefore did not trigger the exclusion.

Mericle's argument that claims grounded in civil remedies cannot trigger the penal statute exclusion is unavailing. We do not believe the Pennsylvania Supreme Court would adopt Mericle's distinction between allegations of criminal acts grounded in civil and criminal remedies. Pennsylvania has a "firmly established" public policy against providing insurance coverage for intentional acts, *State Farm Auto. Ins. Co. v. Martin*, 660 A.2d 66, 67-68 (Pa. Super. Ct. 1995) (citing *Nationwide Mut. Ins. Co. v. Hassinger*, 473 A.2d 171, 173 (Pa. Super. Ct. 1984)), and does not require an insurer to defend an insured for the insured's own intentional torts or criminal acts. *See Germantown Ins. Co.*

10

*v. Martin*, 595 A.2d 1172, 1175 (Pa. Super. Ct. 1991). The underlying complaint alleges claims for conspiracy and other intentional crimes. Mericle "should not be able to avoid financial responsibility by shifting the penalty for his criminal act to an insurance carrier." *Kraus v. Allstate Ins. Co.*, 258 F. Supp. 407, 412, aff'd, 379 F.2d 443 (3d Cir. 1967). For reasons of public policy, we predict that the Pennsylvania Supreme Court would not distinguish between civil and criminal penalties in the application of the criminal statute exclusion as the court has not permitted a person to insure against intentional acts. The District Court correctly found the penal statute exclusion applicable.

 *4. The Knowing Violation of Rights Exclusion is applicable.*

 Mericle's policy excludes coverage under Coverage B for "Knowing Violation of Rights of Another" if the injury is "caused by or at the direction of the insured with the knowledge that the act would violate the rights of another." When "an insurer relies on a policy exclusion as the basis for its denial of coverage and refusal to defend, the insurer has asserted an affirmative defense and, accordingly, bears the burden of proving such defense." *Mistick, Inc. v. Nw. Nat'l Cas. Co.*, 806 A.2d 39, 42 (Pa. Super. Ct. 2002) (internal quotation marks and citation omitted). "Thus, unless the insurer establishes that the allegations of the insured's complaint fall within the stated scope of the exclusion, the court must deny its demurrer and require the insurer to tender a defense under the policy." *Id.*

 Mericle contends there are no factual allegations that he knew or directed any act with the knowledge that it would violate plaintiffs' rights. Because there is no evidence he knew of the violations, he argues the exclusion is inapplicable. The District Court

11

found the exclusion applicable because the complaint contained allegations Mericle was part of a conspiracy in which juveniles were committed to facilities with the knowledge that their detention had been procured by violating their constitutional rights. For the reasons previously stated, we agree with the District Court that the complaint contained allegations Mericle knew of the deprivations because it was part of the scheme to ensure that the facilities operated at near or full capacity to ensure future construction.

Mericle cannot recharacterize the allegations in order to obtain coverage. The "four corners" of the complaint govern whether the duty to defend is triggered, and we are not at liberty to evaluate the accuracy of the allegations. We agree with the District Court that coverage is excluded because the complaint alleges that the defendants, including Mericle, "knowingly and willfully" entered into an agreement to ensure future contracts for the construction of new detention facilities would be awarded to Mericle Construction in exchange for compensation. The District Court correctly summarized the complaint as follows:

> The MCAC alleges that Mericle and Mericle Construction paid the Luzerne County judges $997,600 for their roles in facilitating the construction of the first juvenile detention center and then an additional $150,000 for an addition to that facility. (MCAC ¶¶ 656, 661.) In order to conceal the first payment, Mericle signed and backdated a "Registration and Commission Agreement" as an attempt to hide the payment as a broker's fee. (MCAC ¶702.) The judges then began to consistently place youths in the facility, which paved the way for the construction of a second facility; as a result, Mericle and Mericle Construction had a financial interest in placing juveniles in these facilities. (MCAC ¶ 669.) It is further alleged that two unnamed parties, one of whom is presumed to be Mericle, concealed $2.6 million in payments to the judges that were made in exchange for the referral of juveniles to the facilities build by Mericle. (MCAC ¶ 695.)

12

Because the complaint alleges Mericle knowingly violated the juveniles' rights, the exclusion applies and Travelers does not have a duty to defend.

Finally, as the duty to defend is broader than the duty to indemnify, there is no duty to indemnify if there is no duty to defend. *See Haver*, 725 A.2d at 746 n.1. Because we have concluded that Travelers did not have a duty to defend, we agree with the District Court that there was no duty to indemnify.

IV

For the foregoing reasons, we will affirm the judgment of the District Court.